WESTERN TRAVELERS' ACCIDENT ASSOCIATION V. LENA MIL-
LER MUNSON.

FILED MAY 17, 1905.   No. 13,807.

1. **Pleading**: DEMURRER. The rule that permits conclusions of law to
be disregarded when the sufficiency of the facts pleaded to con-
stitute a cause of action or·defense is called in question, has
no application to conclusions of fact.

2. ———: SUFFICIENCY. When thus assailed the pleading is good if
the ultimate facts constituting a cause of action or defense are
alleged. If the facts thus alleged do not make the pleading
sufficiently definite and certain the remedy is by motion.

3. **Witness**: CONFIDENTIAL COMMUNICATIONS: WAIVER. The prohibitions
in section 333 of the code against a physician's testifying to
confidential disclosures made to him in the course of his pro-
fessional employment, are for the benefit of the patient, who,
by the express provisions of section 334 of the code is permitted
to waive them.

4. **Waiver.** It is not necessary that such waiver be made at the time
of the trial, it may ·be included in and made a part of the
contract sought to be enforced in the action in which such
testimony is offered.

5. ———: INSURANCE CONTRACT. A stipulation in a contract of life
insurance to the effect that the proofs of death shall consist in
part of the affidavit of the attending physician, which shall state
the·cause of death and such other information as may be required
by the insurer, constitutes a waiver within the meaning of said
sections, and renders the attending physician a competent witness
as to the confidential disclosures made to him by the assured
concerning his last sickness.

6. **Evidence.** Statements of fact fairly indicative of a relevant bodily
condition of the declarant at the time of the declaration are
admissible as evidence of the existence of such condition, al-
though made a considerable time after the injury was received.

7. ———: HARMLESS ERROR. The admission of the testimony of the
wife as to communications made to her by her husband in his
last sickness, *held* not prejudicial error under the circumstances
disclosed by the record in this case.

ERROR to the district court for Douglas county: JACOB
FAWCETT, JUDGE. *Affirmed.*

*O'Neill & Gilbert,* for plaintiff in error.

*Wright & Stout, Watt G. Sheldon* and *Frank T. Ransom, contra.*

ALBERT, C.

The terms plaintiff and defendant will be used herein with reference to the title of the cause in the court below. The defendant is a fraternal insurance association. Charles J. Munson, deceased, was a member thereof, and held a membership certificate therein insuring him, among other things, against death "through external, violent and accidental means." The plaintiff is the widow of the assured, and the beneficiary named in the certificate. The constitution of the association, which is a part of the contract of insurance, provides that no claim shall be valid unless notice in writing of the accident is received in the office of the association within 15 days from the date thereof, and affirmative proofs in writing of said claim, as required by the executive board, are received within 30 days after the loss occurs; such proof in case of death of the assured to consist of the affidavit of the beneficiary and the attending physician, which "shall state the cause of death, giving dates of the accident and particulars thereof, and also the date of death, and such information as may be required by the association." In the petition upon which the cause was submitted to the jury, among other things, it is alleged: "That at all times subsequent to becoming a member of defendant association, as aforesaid, and up to the time of his death, as hereinafter set forth, he, the said Chas. J. Munson, continued a member thereof in good standing, and while so in good standing, and within three months immediately prior to his death, was accidently cut, wounded, bruised and injured by external, violent and accidental means, the exact time, place and manner of receiving said accidental cuts, wounds, bruises and injuries, as aforesaid, is unknown

to the plaintiff; and that the said Chas. J. Munson, after receiving said injuries, and on, to wit, August 27, 1902, and by reason thereof, and independently of all other causes, died." It is further alleged, that the assured had fully kept and performed all the terms and conditions of said contract of insurance on his part to be kept and performed, and that the plaintiff has fully kept and performed her part thereof, except to furnish or file the proofs of death hereinbefore mentioned; but that the furnishing and filing of such proofs had been waived by the association within 30 days from the death of the assured. In the answer to said petition the allegations as to the cause and manner of death, notice to the defendant of the accident as required by the constitution, and a waiver of formal proofs of death, are denied. The answer also contains allegations to the effect that no such notice was given or proof made, and that the death of the deceased was due to natural and not to accidental causes. There was a verdict for plaintiff and judgment accordingly.

It is claimed by the defendant that the petition does not state facts sufficient to constitute a cause of action, in that it fails to show that the injury was received through accidental means. In making this claim counsel do not overlook the positive averment of the petition, hereinbefore set out at length, that the assured "was accidentally cut, wounded, bruised and injured by external, violent and accidental means, the exact time, place and manner of receiving said accidental cuts, wounds, bruises and injuries, as aforesaid, is unknown to the plaintiff," but insists that the allegation that "the exact time, place and manner of receiving said accidental cuts, etc., are unknown to the plaintiff," negatives the allegation that such injuries were accidental, and destroys its force and effect. We do not believe that the language will bear that construction. There is a positive allegation that the injuries were received through accidental means. That plaintiff afterwards disclaims knowledge of the exact time, place and manner of receiving such accidental injuries in nowise

negatives her allegation that they were accidental. For example, a man is found crushed and dying between the rails of a railroad track in the wake of a passing train. In the absence of any explanation of the circumstances, that his injuries were due to accidental means would be a reasonable inference. This inference, though slightly weakened, would not be negatived by the fact that "the exact time, place and manner" of receiving the injuries were unknown.

It is also urged that the allegation that the injuries were received through accidental means is a mere conclusion. It is an elementary rule that a bare conclusion of law adds nothing to the value of a pleading, and should be disregarded when the sufficiency of the facts pleaded to constitute a cause of action or a defense is called in question. But this rule does not extend to conclusions. of fact, such conclusions do not render a pleading vulnerable to a demurrer. Ordinarily, it is only necessary to plead the ultimate facts upon which the pleader relies. Such facts, of necessity, are conclusions drawn from intermediate and evidential facts. If the ultimate facts are not stated with sufficient certainty, the remedy is by motion. Whether the injuries were received through accidental means is purely a question of fact, and the allegation that they were thus received is a conclusion of fact, and does not fall within the rule invoked by the defendant.

The court directed the jury that the question for their determination was whether the assured died as a result of an injury received while traveling as a passenger on a freight train on the Burlington and Missouri River Railroad, near the town of Brush, Colorado; and the defendant insists that the evidence is insufficient to show that the assured received any injury by accidental means at that time. The evidence shows that on the 20th day of August, 1902, the assured left his home in Denver. Two days afterwards he was seen in Akron, Colorado, where, at 11:30 P. M., he boarded the caboose of a freight train on

the Burlington and Missouri River Railroad. At about 1: 30 the next morning, when the train was near Brush, in that state, and while it was running about 40 miles an hour, an axle on one of the freight cars broke, one end of which was driven through the car; the other struck the track, tearing up the ties for some distance. The evidence sufficiently shows that the assured was in good health when he left home, and remained in that condition to the time of the accident to the train. He was the only passenger on the train, and there is no direct testimony that he was injured by the accident. After the accident the assured was taken on the engine to Brush, and there took passage on a train for Sterling, Colorado, where he arrived about 6 o'clock the same morning. His appearance on his arrival there indicated that he was ill, and he at once sought a hotel and retired. In the afternoon a physician called to treat him found him in bed, apparently suffering and complaining of pains in his back. The physician continued to treat him, and some two or three days after his first visit examined his back, and found bruises in close connection with the lower lobe of the left lung and at or about the place where the assured located the pain. The assured died the fourth day after his arrival at Sterling. The testimony of the attending physician is to the effect that the assured died of pneumonia or congestion of the lungs, produced by the injury indicated by the bruises, and that such injury was the primary cause of his death. From these facts it is reasonably clear, we think, that the assured up to the time of the accident was in good health, within a few hours thereafter suffering from injuries peculiarly likely to result from the accident to the train on which he was a passenger; and that within four days thereafter he died of such injuries. It is true the conductor of the freight train testified that he was in the cupola of the caboose when the accident occurred, and that the assured was lying on one of the seats, apparently asleep; that the accident caused no sudden stopping of the car, and no

unusual jolt or jar, and, apparently, did not awaken the assured, or cause him to change his position. He also testified that as a result of the accident the engine separated from the cars and the air brakes were immediately set. He was the only witness present with the assured on the caboose, and the defendant insists that his testimony absolutely negatives the theory that the assured was injured in that accident. We do not think so. The jury were not bound to accept his testimony at its face value. He was not wholly a disinterested witness. He was conductor of the train, and, to some extent, was responsible to his employer for its proper management and the safety of his passengers. His home is in Denver, and he attended as a witness at the request of his employer. As against his testimony as to the effect of the accident on the caboose is the evidence of another trainman to the effect that the caboose, under such circumstances, would stop or slacken its speed suddenly, and with a jolt or jar. Taking into account the nature of the accident, this evidence is more in accord with reason and common knowledge, and the jury had a right to accept it as true. Taking the evidence as a whole, we are satisfied that the inference drawn by the jury therefrom that the assured died of injuries received while riding on the train at the time of the accident related is a reasonable one. Proof amounting to a demonstration is never attainable and never required in cases of this kind. All that is required is to establish a reasonable probability. *Western Travelers' Accident Ass'n v. Holbrook*, 65 Neb. 469. That, in our opinion, was done in this case.

It is also insisted that the evidence is insufficient to show that such injuries, independently of all other causes, caused the death of the assured. Whether such injuries did thus cause his death is peculiarly a question of fact. *Modern Woodmen Accident Ass'n v. Shryock*, 54 Neb. 250; *United States Mutual Accident Ass'n v. Barry*, 131 U. S. 100; *Fetter v. Fidelity & Casualty Co.*, 174 Mo. 256, 61 L. R. A. 459. It was submitted to the jury on con-

flicting evidence sufficient to sustain a finding either way, and under the settled rule of law the finding of the jury thereon under such circumstances is conclusive.

The cause was tried on an amended petition. In her original petition the plaintiff instead of alleging, as in the amended petition, that the injuries causing the death of the assured occurred within three months preceding his death, and that the exact time, place and manner of receiving such injuries were unknown to her, alleged that they occurred August 23, 1902, while he was traveling in the caboose of a freight train going from Akron to Brush, Colorado, and that by reason of the accident to the train hereinbefore related he "was violently thrown against the floor, roof and walls of said caboose, and was thereby accidentally cut, wounded, bruised and injured by external, violent and accidental means," etc. The defendant insists that the amended petition amounts to an admission that the allegations in the original petition as to the time, place and manner of receiving the injuries were untrue, and that such injuries were received at some other time and place, and in a different manner. Hence, it is argued that the notice of the accident which gave the time, place and manner of receiving the injuries as alleged in the original petition was not notice of the accident relied upon in the amended petition. One answer to this is that, while the original petition states the facts with greater exactitude, it does not purport to give the exact time, place and manner of receiving the injuries. If in the amended petition the plaintiff had averred that she was unable to give the time, place and manner with greater exactitude, there would be some ground for holding that the allegations of one pleading or the other must be untrue. But in the amended petition she merely avers that she cannot state what she did not state in the original petition, namely, the exact time, place and manner of receiving the injuries. The evidence shows that the defendant had due notice that the assured was injured in the accident on the train near Brush. The court limited the proof to that accident, and

we are all of the opinion that the defendant's claim of a want of notice is unfounded.

It is also claimed that the evidence fails to show a waiver of proofs of death. This claim is based on the same line of reasoning as that of a want of notice, and what we have said with respect to that claim applies here. The question of waiver was duly submitted to the jury, and the finding of the jury thereon is abundantly sustained by the evidence.

The physician, who attended the assured in his last sickness, was permited to testify, over the objection of the defendant, as to the nature of such illness, and other matters of a confidential nature relating thereto, intrusted to him in his professional capacity. The defendant now assigns the reception of this evidence as error. Section 333 of the code provides that "no practicing attorney, counsellor, physician, surgeon, minister of the gospel, or priest of any denomination shall be allowed, in giving testimony, to disclose any confidential communication properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline." Section 334 provides that the prohibition in the preceding sections do not apply where the party in whose favor they apply waives them. The secrecy enjoined upon physicians by section 333 is for the protection of the patient, and from the provisions of section 334 it is quite clear that when the patient is willing to waive that protection, and to permit a disclosure of the secrets of the sick-room, he may do so. It has been held that the patient may waive the protection of the statute, even though there is no provision for such waiver. *Carrington v. City of St. Louis,* 89 Mo. 208; *Grand Rapids & I. R. Co. v. Martin,* 41 Mich. 667. It is not necessary that such waiver should be made at the time the testimony is offered, but it may be made a part of a contract, and is available in an action brought to enforce such contract. *Adreveno v. Mutual Reserve Fund Life Ass'n,* 34 Fed. 870, was an action

58

to recover the amount due on a benefit certificate. In the contract of insurance the assured in express terms had waived the benefit of provisions of a statute of Missouri similar to section 333. In passing on the effect of such waiver, the court said:

"The statute is construed in this state as conferring a privilege merely, that may be waived; it is not declaratory of any public policy. The public is not concerned in excluding the testimony of a physician as to the condition of a patient, if the patient himself does not object to such disclosures. In this respect the courts of this state follow the rulings in New York and Michigan, under a similar statute, as appears by the cases of *Cahen v. Continental Life Ins. Co.,* 41 N. Y. Super. Ct. 296; *Grand Rapids & I. R. Co. v. Martin,* 41 Mich. 667. As the patient is at liberty to waive the privilege which the law affords him, it appears to me it is immaterial whether the patient waives the privilege by calling the physician to testify in his behalf, or whether he waives it, as in this case, by a clause contained in the contract on which the suit is brought; and if the patient himself waives the privilege by a clause contained in the contract, that waiver, in my judgment, is binding on anyone who claims under the contract, whether it be the patient himself or his representative."

This case was followed in *Foley v. Royal Arcanum,* 151 N. Y. 196, 56 Am. St. Rep. 621. See also *Alberti v. New York, L. E. & W. R. Co.,* 118 N. Y. 77; *Rosseau v. Bleau,* 131 N. Y. 177, 27 Am. St. Rep. 578. *In the matter of Coleman,* 111 N. Y. 220, an attorney of the testator who had signed the attestation clause of the will as a witness was called as a witness, and his testimony was objected to on the ground that it was prohibited by a statute similar to the one under consideration. The court said:

"The act of the testator, in requesting his attorneys to become witnesses to his will, leaves no doubt as to his intention thereby to exempt them from the operation of the statute, and leave them free to perform the duties of the

office assigned them, unrestrained by any objection which he had power to remove."

In the present case the constitution of the association expressly requires the affidavit of the attending physician as a part of the proofs of death, and that such affidavit shall state the cause of death and such information as may be required by the association. This provision was a part of the contract of insurance, and was assented to by the assured when he became a, member of the association and accepted his certificate of membership. By assenting to those provisions, it seems to us the assured clearly and unequivocally waived the benefits of section 333, *supra,* and agreed that the attending physician should be permitted to disclose the cause of death and such other facts and circumstances as might be disclosed to him in his professional capacity while in attendance on the assured in his last sickness. In other words he expressly stipulated that the secrecy enjoined by section 333 upon his attending physician should not be observed. The proper treatment of a patient often involves an intimate knowledge on the part of his physician of facts of a delicate nature, and which the patient would object to having disclosed to third persons. The common law protects the patient against the voluntary disclosure of such facts, and the statute protects him against their involuntary disclosure by his physician. But where the patient himself not only consents, but expressly stipulates, that such disclosures be made in order to give force and effect to his contract, it would be a harsh and unwarranted application of a salutary rule to hold that the plaintiff could not avail herself of such stipulation for the enforcement of the contract made for her benefit. The case in principle is much like the.*Coleman* case, *supra,* and, in our opinion, the testimony of the attending physician was properly received. See also *McKinney v. Grand Street, P. P. & F. R. Co.,* 104 N. Y. 352.

It is further claimed that the plaintiff in this case was permitted to testify to communications made to her by her

husband in his last sickness, contrary to the provisions of section 332 of the code. It is conceded by both sides that the assured died of congestion of the lungs, or pneumonia; the only controversy on this point being whether it was brought on by external injuries received through accidental means or otherwise. The testimony of the plaintiff, the reception of which is now criticised, simply detailed the complaints of suffering made by the assured on his deathbed. The ground had been substantially covered by the testimony of the attending physician, whose evidence as to these particulars is uncontradicted; the complaints and symptoms described were such as would be the natural concomitants of congestion of the lungs, or pneumonia, whether the disease was brought on by the accident alleged or otherwise. The reception of this evidence, if erroneous, would seem to be error without prejudice.

Another error assigned is that the court permitted a witness to testify, over objection, that when he entered the sick-room of the assured the assured said: "I am badly shaken up. No bones broken, old fellow, and it might have been worse." The testimony was given in response to the following question: "State, now, the words that he used in expressing his then condition." This was objected to as incompetent, calling for hearsay, and for matter no part of the *res gestæ*. The court then instructed the witness as follows: "Give his words that he used at that time about the condition you found him in, as to his condition at that time." The attorney for the defendant added: "And not what caused it. Is that correct?" The court then said: "Must give his words as to his condition." The witness then answered by giving the words of the assured as above quoted. We do not think that there was any error in the reception of this evidence. It was not offered as part of the *res gestæ*, but as a statement of the assured of his then physical condition. This statement was made a few hours after his arrival at the hotel in Sterling. The statement was not an inapt description of his then bodily condition, although somewhat figurative. The rule is well settled

that statements of fact fairly indicative of a relevant bodily condition of the declarant at the time of the declaration will be received as circumstantial evidence of the existence of that condition, although made a considerable time after the injury was received. *Bacon v. Inhabitants of Charlton*, 7 Cush. (Mass.) 581; *Bredlau v. York*, 115 Wis. 554, 92 N. W. 261; *Elmer v. Fessenden*, 151 Mass. 359, 5 L. R. A. 724.

The defendant complains of an instruction of the court, hereinbefore referred to, relating to the time and manner of receiving the injury alleged as the cause of the death of the assured. The argument on this point proceeds on the theory heretofore noticed that the plaintiff by filing an amended petition had abandoned the claim that the assured came to his death as a result of an injury received on the railroad train near Brush. We have already noticed that theory in a former part of this opinion, and what is there said, we think, disposes of the criticism of this instruction.

The defendant complains of another instruction of the court, given at the request of the plaintiff, wherein the question, whether the assured at the time of receiving the injury alleged was free from actual existing disease and bodily infirmity which might naturally produce death, was submitted to the jury, on the ground that the evidence is conclusive that the deceased at the time of the alleged accident was affected with bodily infirmity in the form of pleural adhesions of the lungs and curvature of the spine. Whether at the time of receiving such injuries the assured was suffering from the bodily infirmities just enumerated is one of the questions embodied in an instruction which the defendant itself tendered. By tendering that instruction it impliedly asked the court to submit that question to the jury, and it cannot now be heard to complain of its submission.

The defendant complains of some of the special findings, but, as the judgment was rendered on the general verdict, we do not think the discussion of the special findings at this time will be productive of any good.

The petition in error contains 212 assignments, some of which were abandoned on argument. Not all of those argued have been specifically noticed in this opinion, but we think the points involved therein are covered by what has already been said. In our opinion the record contains no reversible error.

We therefore recommend that the judgment of the district court be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.