Argued February 6, decided February 18, 1913.

**FORREST v. PORTLAND RY. L. & P. CO.**

(129 Pac. 1048.)

Witnesses—Competency—Physicians—Privilege—Waiver.

1. Where plaintiff in an action for injuries testified to her physical condition, alleged to have resulted from the injury sued for, and admitted that she consulted a physician, submitted herself for examination, and obtained his opinion as to her condition, but did not call him as a witness, she waived her right to object to the physician testifying as a witness for the defendant, under Sections 733, 734, L. O. L., providing that a regular physician or surgeon shall not without the consent of his patient be examined in a civil action as to any information acquired in attending the patient necessary to enable him to prescribe or act therefor, provided that, if the party to the action offer himself as a witness, then he shall be deemed to have consented to the examination of the physician.

Appeal and Error—Harmless Error—Reception of Evidence—Cumulative Testimony—Qualification of Witness.

2. Where, in an action for injuries, plaintiff called ten witnesses, including three physicians whom she had consulted, and who testified with reference to her physical condition, and defendant called three witnesses, such fact did not render innocuous an erroneous ruling excluding the testimony of a physician to whom plaintiff submitted herself for examination, but whom she did not call, whose testimony was offered by defendant, on the theory that such witness' testimony was cumulative only, under Section 856, L. O. L., providing that the court may stop the production of further evidence on any par-

ticular point when the evidence on it is already so full as to
preclude reasonable doubt.

**Appeal and Error—Review—Verdict—"Trial by Jury."**
    3. Section 3, Article VII, of the Constitution as amended
in 1910 (L. O. L. xxiv), provides that, in actions at law, the
right to trial by jury shall be preserved, and no fact tried by a
jury shall be otherwise re-examined in any court, unless the court
can affirmatively say there is no evidence to support the verdict.
Held, that the term "trial by jury," as so used, means a verdict
reached under the forms of law prescribed for a jury trial, and
hence such section does not preclude the Supreme Court from
reversing a judgment based on a verdict returned after the
erroneous exclusion of material evidence.

From Multnomah:  ROBERT G. MORROW, Judge..

Statement by MR. JUSTICE BURNETT.

This is an action by Gertrude H. Forrest against the
Portland Railway Light & Power Company, a corpora-
tion.  The facts are as follows:

The plaintiff was a passenger in one of the defend-
ant's street cars, and claims to have been injured in a
collision between that car and another one on the same
line.  She alleged "that the shock of said collision greatly
injured the nervous system of the plaintiff, caused a dis-
placement of her uterus, rendered her sick and sore,
caused her to be confined to her room almost constantly
for two months, caused her great physical pain and suf-
fering, necessitated the employing of physicians and
paying and incurring expenses for medical treatment,
* * and left her weak and nervous and permanently
injured to her damage" in a sum named.  The answer
traversed all the allegations of the complaint except that
of the defendant's own corporate character, but at the
trial the liability of the defendant was admitted, and the
only question left for determination was what, if any,
injury or damage was sustained by the plaintiff.  At
the hearing the plaintiff offered herself as a witness,
and testified at length about the extent and nature of

her injuries and physical condition, and detailed how she had consulted several physicians, some of whom she called as witnesses in support of her case. Among others, she consulted Dr. Marsh, to whom she submitted herself for examination, and obtained his opinion as to her condition, but did not take treatment from him. After plaintiff had rested without calling Dr. Marsh, the defendant had him sworn, and undertook to elicit from him testimony relating to what he had discovered about the plaintiff's physical condition at the examination mentioned. The plaintiff objected to his testifying, claiming that the physician could not be allowed to disclose any information which he had thus acquired. The court sustained the objection, and refused to allow Dr. Marsh to testify, and this is the error complained of by the defendant on its appeal from the subsequent judgment in favor of the plaintiff.    REVERSED.

For appellant there was a brief over the names of *Messrs. Wilbur, Spencer & Dibble,* with an oral argument by *Mr. Rufus A. Leiter.*

For respondent there was a brief and an oral argument by *Mr. Jerry E. Bronaugh.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. In Chapter 4 of Title IX of the Oregon Code of Civil Procedure, it is said (Section 731, L. O. L.), that—

"All persons without exception, except as otherwise provided in this chapter who having organs of sense can perceive and perceiving can make known their perceptions to others may be witnesses. * * "

In Section 733, L. O. L., it is stated that—

"There are particular relations in which it is the policy of the law to induce confidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases: * * (4) A regular physician or surgeon shall not without the consent of his patient be

examined in a civil action, suit or proceeding as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient. * * "

In Section 734 it is provided that—

"If a party to the action, suit or proceeding offer himself as a witness that is to be deemed a consent to the examination of a wife, husband, attorney, clergyman, physician or surgeon on the same subject within the meaning of subdivisions 1, 2, 3, and 4 of the last section."

It is only by virtue of the statute that the testimony of an attending physician or surgeon relating to the physical condition of his patient is excluded, for at common law the medical man was required to testify practically the same as any other witness. *Pierson* v. *People,* 79 N. Y. 424, 432 (35 Am. Rep. 524) ; *Winters* v. *Winters,* 102 Iowa, 53, 57 (71 N. W. 184: 63 Am. St. Rep. 428). *In re Young's Estate,* 33 Utah, 382 (94 Pac. 731: 17 L. R. A. [N. S.] 108: 126 Am. St. Rep. 843: 14 Ann. Cas. 596). Originally privileged communications were limited to those between an attorney and client, and many statutes have been passed in the various states extending this rule to physician and patient. Some enactments impose this restriction without any qualification. Others make an exception where the patient shall definitely waive the privilege or give an express consent. Under laws of the latter sort, the authorities are not in accord on the subject of what shall be deemed a consent to the examination of the attending physician. Some hold that there must be an express waiver at the time of the trial. Such a case is *Western Travelers' Accident Association* v. *Munson,* 73 Neb. 858 (103 N. W. 688: 1 L. R. A. [N. S.] 1068) ; also *Met. St. Ry. Co.* v. *Jacobi,* 50 C. C. A. 619 (112 Fed. 924). Others, like *Hunt* v. *Blackburn,* 128 U. S. 464 (9 Sup. Ct. 125: 32 L. Ed. 488), hold that a party testifying on the subject himself must be held to have waived the privilege

independent of any statute defining what shall be a
waiver. In all the cases cited in the briefs before us the
statutes have either. required an express consent to the
examination of · the physician, or have failed to · define
what is meant by the terms "waiver" and "consent," or
have made no exception to the restriction. Our atten-
tion has not been directed to any other statute like Sec-
tion 734, L. O.· L., *supra,* which provides that a party
offering himself as a witness shall be deemed to have
consented to the examination of a physician or surgeon
on the same subject. This section stills the confusion
among the precedents based on statutes not having such
a provision, and gives legislative sanction to the com-
mon-sense reason that if a party of his own accord shall
withdraw the privileged veil of privacy which, for his
own protection, the law has placed around the relation
of physician and patient, the whole matter is thereby set
at large. As we have seen from the quotations of our
Code, all persons may be witnesses. This is the rule
except as otherwise provided in the chapter mentioned,
and, if a party would exclude a witness, it is incumbent
upon the objecting litigant to show that the person asked
to testify is within the exception named. The subject
under consideration as stated in the complaint and about
which the plaintiff spoke herself as a witness was her
physical condition, including a displacement of her uterus
and injuries to her nervous system. When she testified
on that subject, under the provisions of Section 734, L.
O. L., she consented to the examination of · her physician
or surgeon on the same subject. This section was con-
strued by Mr. Justice MCBRIDE (*In re Young's Estate,*
59 Or. 348 :116 Pac. 95), in a case involving confidential
communications between an attorney and client in these
words:

"The proponent, having voluntarily gone upon the
stand as a witness upon the general subject, waived the
right in any event to the examination of Judge Phelps."

The defendant offered to prove by Dr. Marsh that the plaintiff came to his office attended by her attorney; that he made a thorough examination of her, including her uterus; that from the position of that organ he was of the opinion that its condition was one of long standing, and not of recent years; that in his judgment from what he had learned of her its abnormal condition was not attributable to a street car accident, and had existed long prior to the date of the casualty. Under the circumstances of her having offered herself as a witness and testified on the subject under consideration, the testimony of Dr. Marsh, as indicated by the offer, was clearly admissible in the trial of the case.

2. It is urged, however, that the testimony sought to be adduced from Dr. Marsh was merely cumulative, and hence no error was committed in excluding it. It is said in Section 856, L. O. L., that "the court, however, may stop the production of further evidence upon any particular point when the evidence upon it is already so full as to preclude reasonable doubt"; but no such case is presented here, and it is not pretended that such a situation existed. That newly discovered evidence is cumulative will destroy its efficiency as a reason for a new trial; but it is not an objection to testimony in the first instance except under the condition specified in this section. The record discloses that the plaintiff had called ten witnesses, including three physicians whom she had consulted. The defendant called but three witnesses besides Dr. Marsh, whose testimony was excluded. Under these circumstances, considering the admissibility of the testimony of Dr. Marsh as covered by the offer mentioned, the court cannot occupy the position at the behest of the plaintiff of saying to the jury, "You may have an opportunity to consider the testimony of Drs. A. and B., but you will not be allowed either to believe or distrust that of Dr. C., who is similarly qualified as a witness." It

would be equivalent to allowing an objecting party at his discretion to select from a number of equally competent witnesses offered by the opposite party those only whom the objector would permit to speak and to reject the others arbitrarily. This would unduly and unfairly restrict the operation of the jury trial so highly prized by English speaking people.

3. Finally, it is urged that as a verdict was rendered it cannot be disturbed, and for this the plaintiff relies upon Section 3 of Article VII of the Constitution of this State as amended at the general election of November, 1910:

"In actions at law * * the right of trial by jury shall be preserved and no fact tried by a jury shall be otherwise re-examined in any court of this State unless the court can affirmatively say there is no evidence to support the verdict. * * " L. O. L. xxiv.

The constitution, as so amended, does not purport or intend to change the signification of the term "trial by jury," as it has been known ever since the birth of constitutional government in this country. On the contrary, it expressly preserves that time-honored institution. A verdict that is immune from re-examination except for an entire want of evidence is not any and every decision that may be reached by a body of 12 men who happen to sit in a jury box and hear the testimony in the presence of a court, but it means one reached under the forms of law as prescribed for a jury trial within the meaning of the constitution from the beginning. In *State* v. *Rader*, 62 Or. 37 (124 Pac. 195), Mr. Justice McBride, in construing this section said:

"But for the jury to find the fact the court must see that they receive only legal evidence and no good finding of fact can ever be predicated upon illegal evidence."

It is equally true that the suppression of legal evidence will vitiate a verdict. An invulnerable verdict must be

a conclusion of fact by a jury regularly impaneled, as the result of a trial in which the rights of all parties in respect to the admission or exclusion of testimony have been observed in all material particulars under proper instructions of the court as to the law. By so much as the elements of this standard were wanting, namely, by the exclusion of competent testimony offered by the defendant, the procedure culminating in the decision of the jury in this case fell short of the trial by jury which the constitution says shall be preserved. For the error assigned the judgment is reversed.          REVERSED.

MR. CHIEF JUSTICE MCBRIDE concurs in the result.