DANIEL M. O'DONNELL, APPELLANT, V. ELMA A. O'DON-
NELL, APPELLEE.

7 N. W. (2d) 647

FILED JANUARY 15, 1943. No. 31520.

*Hubka & Hubka,* for appellant.

*Jack & Vette, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE,
CARTER and YEAGER, JJ.

PAINE, J.

This is a divorce action, in which the court granted a di-
vorce to the wife upon her cross-petition, with alimony of
$4,000 and attorney's fees of $200. Husband appeals.

In his amended petition plaintiff alleged that he and the
defendant were married February 27, 1939, and are resi-
dents of Wymore; that no children have been born to the
union; that plaintiff has at all times conducted himself as

a true and faithful husband, but that defendant has been guilty of gross mental cruelty towards plaintiff, as follows: That within two weeks after they were married defendant left the home of plaintiff and went to her home, and that since that time she has lived for much of the time at her own home, refusing to live with plaintiff, notwithstanding the fact that plaintiff had a good home in which he wanted her to live, and thereafter bought another home and offered to furnish it, but in which she refused to live and chose to rent so that she might collect the rents therefrom.

The petition further states that there is to the credit of plaintiff and defendant jointly in the State Savings & Loan Association of Beatrice an account of $1,163.40, with right of survivorship; that said money was actually earned by plaintiff, and he asks the court to decree the same to be the money of plaintiff. In addition, there stands of record in the names of plaintiff and defendant a lot in the city of Wymore, which property was actually bought and paid for by plaintiff. Plaintiff prays for an absolute divorce, that the account in the State Savings & Loan Association of Beatrice and the real estate in Wymore be decreed as the sole property of plaintiff.

The defendant in her answer admitted the marriage, and that about October, 1940, plaintiff and defendant resided at a hotel in Fairmont; charged that plaintiff had for a long time acted without love or affection towards defendant; admitted the account in the State Savings & Loan Association of Beatrice of $1,163.40, which money was the result of the savings made by defendant; that the lot in Wymore, standing of record in the names of plaintiff and defendant, was purchased with savings made by defendant, and defendant denies each and every allegation set out in the amended petition not specifically admitted.

Defendant admits that much of the time since her marriage to plaintiff has been spent at the residence of her parents, but that such arrangement did not arise from her choice, but because plaintiff failed to furnish her a home; that when plaintiff and defendant were married plaintiff

was stationed at Nebraska City and did not desire to establish a residence there, and for several months defendant spent part of the time at the home of plaintiff's mother, and went with her to Nebraska City as often as possible to see the plaintiff; that about July 4, 1939, they established a residence at Edgar, and resided there until about March 1, 1940, with the exception of a period of about three weeks; then the plaintiff, a locomotive fireman, was transferred to Wymore, and for about a month defendant spent a part of the time in the home of plaintiff's mother and a part of the time at her parents' home. After that plaintiff was transferred to Fairmont, and until October, 1940, plaintiff provided no home whatever for defendant, but in the beginning of said period would occasionally come to Wymore and take her and leave her at her parents' home, and the only opportunity defendant had to see the plaintiff then was when she would get a chance to go with plaintiff's mother to Fairmont, and before long plaintiff's mother made trips to Fairmont without giving defendant any chance to go along. The automobile which plaintiff's mother used was one purchased by plaintiff but licensed in the name of his mother. Plaintiff carried life insurance with his mother named as beneficiary, and declined to change any of said insurance to name defendant.

About the first week in October defendant went by train to Fairmont, out of which town plaintiff was working, but plaintiff failed to provide any place for them to live at Fairmont, and defendant obtained employment at the hotel where he was staying, paying part of the room rent and for all of her own board, and this continued until early in April, 1941, when plaintiff was transferred again to Wymore, and shortly thereafter to Table Rock, and plaintiff took defendant to her parents' home and left her there, and has never offered to provide a home for her since that time, although repeatedly requested to do so.

The defendant alleges that she has conducted herself toward plaintiff as a faithful, chaste and obedient wife, but plaintiff has been guilty of extreme cruelty toward defend-

ant in that he has failed to provide a home for her. Defendant alleges that, in addition to the real estate hereinbefore mentioned, which is of the approximate value of $1,200, plaintiff is the owner of a quarter-section of land in Gage county, Nebraska, and of 80 acres of land in Washington county, Kansas, and although the two tracts appear of record in the name of plaintiff's mother the fact is that said real estate is the property of plaintiff, was acquired and paid for by him, and reconveyance deeds from his mother to him have been made and delivered, and said tracts of real estate are of the fair value of at least $16,000.

Defendant claims that, aside from her interest in the lot and residence at Wymore and in the State Savings & Loan Association account, she has no other property of her own, that she has no trade or profession and is dependent upon the charity of her parents for support; that plaintiff is 42 years of age, in good health, and earning approximately $200 a month. Defendant asks for separate maintenance, and in the alternative that she be granted a decree of divorce and reasonable alimony.

Plaintiff's reply denied all of the charges of extreme cruelty, and denied that he has any right, title or interest in the real estate described in defendant's answer, which stands in the name of his mother, all of which was told to defendant prior to their marriage.

The court dismissed the amended petition of plaintiff, and granted an absolute decree of divorce to defendant, with permanent alimony in the sum of $4,000, which plaintiff is directed to pay as follows: The amount in the joint account in the State Savings & Loan Association of Beatrice to be assigned in writing by plaintiff to defendant concurrently with defendant executing and delivering a quitclaim deed to plaintiff for lot 4, block 12, Wymore's Addition to the city of Wymore. It was decreed that the balance of the alimony, or $2,836.60, should be paid as follows: $900 on on the 1st day of October in 1942, 1943 and 1944, and $136.60 on the 1st day of October, 1945, said instalments not to draw interest until after maturity. The court also

decreed, in addition to the payment of $50 already made, an additional sum of $150 as attorney's fee to defendant, together with costs.

In the bill of exceptions, of some 300 pages and many exhibits, nearly every allegation of the pleadings is contested. However, this opinion will be confined to the two main propositions,—first, that the court erred in refusing to order the defendant to submit herself to a physical examination, and, second, that the alimony awarded is excessive.

During the progress of the trial, plaintiff demanded that defendant submit to physical examination, as follows: "Mr. Hubka: At this time I want the record to show that the plaintiff makes request that this defendant submit herself for examination. * * * I think the evidence will prove * * * she will not be able to bear children."

Before the court ruled on a renewal of this request, he asked leave to cross-examine the plaintiff, who thereupon was recalled to the stand, and in answer to questions by the court he stated that there was no physical impediment or hindrance to his having intercourse with his wife.

Thereupon, the court denied the request on the grounds, first, that it had been made during the trial, and, second, in view of the fact that it is but one element of cruelty, the defendant need not submit herself to a physical examination.

This court has held that, where the request for a physical examination is first made during the progress of the trial, it is addressed to the sound discretion of the trial court, for there is no absolute right to such an examination, and a denial of such request is not prejudicial unless the ruling indicates an abuse of discretion on the part of the court. See *Ziskovsky v. Miller*, 120 Neb. 255, 231 N. W. 809.

"It is plain that whether the court should stop the progress of a trial for the purpose of ordering a physical examination, especially when no reason is shown why the application was not sooner made, is a matter which rests in the sound legal discretion of the trial court, and unless such discretion has been abused, the action of the court will not

constitute reversible error." *O'Brien v. Sullivan,* 107 Neb. 512, 186 N. W. 532. See, also, *Stuart v. Havens,* 17 Neb. 211, 22 N. W. 419; *City of Chadron v. Glover,* 43 Neb. 732, 62 N. W. 62.

In our opinion, there was no prejudicial error in refusing the request for a physical examination in the instant case.

We will now consider the question of the refusal to allow the introduction of the hospital chart in evidence.

Section 20-1206, Comp. St. 1929, on Privileged Communications, forbids any physician to give testimony of confidential matters entrusted to him in his professional capacity, and this has been held to include nurses' and hospital records.

In the case at bar, Reverend J. G. Kitzelman was called as a witness, and stated that he was general superintendent of the Lutheran Hospital in Beatrice, and that he had searched the hospital records and found a chart relating to the operation of the defendant, Elma Hughes, under date of March 20, 1935, which was prior to her marriage. He testified to the date of her admission and the date of the operation, and that he was acquainted with the signature at the bottom of the record, and that it was made by Dr. J. M. Moritz, and the plaintiff then offered as exhibit No. 6 such chart or operative record.

The objection of defendant was that it was a privileged· communication or record, and making it public was objected to by her, and for the further reason that it was not made under oath of the party who made it. The court in making the ruling stated that the doctor himself would be disqualified to testify if he had been called as a witness, and that, if the doctor was disqualified, certainly any record kept by the doctor or the hospital would not be admissible, and the objection was sustained.

We recognize that the admission of hospital charts was approved by this court in *Willis v. Order of Railroad Telegraphers,* 139 Neb. 46, 296 N. W. 443, where we held that the official charts and records kept in the regular course of

business in a hospital are admissible in evidence when a proper foundation has been laid. In an examination of that case it appears that both the insured and his widow had waived all objections of their privilege and consented to the testimony of any physician being received, or the admission of any hospital records, and under these written waivers this court held that the district court was right in admitting the hospital charts and records when such a foundation had first been laid. An exhaustive annotation in 120 A. L. R. 1124, presents every phase of this question, with abundant citation of authorities. Under the evidence in this case, there was no error in the court refusing to receive in evidence the operative chart of the hospital.

We will now consider the error alleged that the alimony awarded the wife is greatly excessive. The plaintiff insists that the wife brought nothing whatever into the marriage except some clothes. He brought all the rest. The defendant was 30 years old when she was married and he was 39 years old. He was a locomotive fireman on the Chicago, Burlington & Quincy railroad, making his headquarters at Wymore, but he was running out of Nebraska City at the time of their marriage, and he drove back every week-end to Wymore. He turned over to her all the pay checks that he received, and she did all the banking business for the two of them.

There is no dispute that at the time of the divorce the parties had $1,163.40 in a building and loan association, had a house in Wymore, worth $1,200, purchased in 1941, two bank accounts of $449.04, a mortgage debt with $115 due plaintiff, and that defendant had $100 in a personal account. Some of these items were in their joint names. All were considered by the trial court, along with the fact that the wife had no property or means of support, while the husband was a fireman on the Burlington railroad, making $200 a month on the average.

The plaintiff and his mother denied upon the witness-stand that he owns the two farms, the titles of which stand of record in the name of his mother, who testifies as to how she acquired each of the two farms.

The defendant testified that time after time, when she was keeping company with him, he took her to see the two farms, and said they were his own, although they stood in his mother's name, and he had deeds to them from his mother. He told her when courting her that the two farms were his life's savings, and all he had to do was to put the deeds from his mother on record.

The mother had always had free transportation on the Burlington, and at one time an official wrote him about his mother's financial condition, and it appears that he wrote out a statement, which plaintiff claims was never mailed, but which his wife found. This exhibit No. 1 was a letter, which plaintiff admitted was in his own handwriting. It reads: "In reply to your letter requesting further statement of facts regarding my mother obtaining transportation I wish to state that I have taken care of mother for 23 years past, and have been her only support. My father died in 1920 leaving her a home but no means of livehood. She at that time could not have kept up the taxes on her home. * * * I managed to acquire some property, * * * and to insure her against poverty in old age. I placed this property in her name. However I manage and supervise this property and the income reverts to me and I in turn adminster to my mother in a kind and generous way. * * * I wish to add that I possess warrantee deeds to this property that I have in mother— name and any time I record these deeds I gain possession of my life's savings."

The evidence cannot be said to have justified the trial court in finding that these farms were owned by plaintiff, and were probably of the value of at least $10,400. The court is of the opinion that alimony in the sum of $2,500 is all that is warranted by the evidence.

This court said: "In fixing the amount of alimony, the court will take into consideration the estate of each party at the time of marriage, their respective contributions since marriage as well as the duration of the marriage, and the conduct of each party leading up to the divorce." *Phillips v. Phillips*, 135 Neb. 313, 281 N. W. 22.

The decree of the trial court is therefore modified to fix the total alimony at $2,500, payable in amounts proportional thereto, as in the original decree.

AFFIRMED AS MODIFIED.