BISHOP CLARKSON MEMORIAL HOS-
PITAL, Appellant,

v.

RESERVE LIFE INSURANCE COM-
PANY, Appellee.

No. 17955.

United States Court of Appeals
Eighth Circuit.

Sept. 21, 1965.

R. D. Neely, of Gaines, Spittler, Neely, Otis & Moore, Omaha, Neb., made argument for appellant and filed brief.

Edmund D. McEachen, of Young, Holm, McEachen, Knowles & Hamann, Omaha, Neb., made argument for appellee and filed brief.

Cline, Williams, Wright, Johnson, Oldfather, & Thompson, Lincoln, Neb., and Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., filed brief of amici curiae.

Before JOHNSEN, VOGEL and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

This is an appeal from the order and judgment of the United States District Court granting a mandatory injunction and permanent injunctive relief. The defendant, appellant, advances two basic contentions: first, that jurisdiction was, and is, lacking for want of a sufficient amount in controversy; second, that even if jurisdiction exists, plaintiff, appellee, is not entitled to the relief granted.[1]

Reserve Life Insurance Company (Reserve or appellee) is a Texas corporation having its principal place of business in that state. Bishop Clarkson Memorial Hospital (Hospital or appellant) is a corporation organized under the laws of, and having its principal place of business in, the State of Nebraska.

Reserve instituted this action to enjoin Hospital from denying authorized representatives of Reserve the right to examine and copy, as necessary, the original hospital records of patients (policyholders of Reserve) who have consented in writing to such inspection in connection with the processing of claims against Reserve.

In its motion to dismiss the complaint Hospital alleged that the amount in controversy was less than the $10,000 necessary to establish jurisdiction. The district court was unable to ascertain from the complaint the value of the right in dispute, so determined that "this question will have to await a trial on the merits," and denied the motion to dismiss.

After trial, the court, in a memorandum opinion, found that Reserve had established that the amount in controversy exceeded $10,000, exclusive of interest and costs.

Appellant has renewed its challenge to the court's jurisdiction and contends that there was no evidence to support the court's finding in that regard.

Since McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct.

1. The Omaha Hospital Association and Nebraska State Medical Association, both non-profit organizations, have filed an amici curiae brief in support of appellant's position.

780, 80 L.Ed. 1135 (1936), it has been settled law that, if the allegation of the jurisdictional amount is disputed, it must be proved and the burden of proof is upon the party who asserts jurisdiction.

"If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." Id. at 189, 56 S.Ct. at 785.

See also Kvos, Inc. v. Associated Press, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936); Gibbs v. Buck, 307 U.S. 66, 72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939); Thomson v. Gaskill, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942); Federated Mutual Implement & Hardware Ins. Co. v. Steinheider, 268 F.2d 734, 737–738 (8 Cir. 1959).

■ The value of the right which is sought to be enforced by the suit determines the amount in controversy. McNutt v. General Motors Acceptance Corp., supra, 298 U.S. at 181, 56 S.Ct. 780, and cases there cited; Kvos, Inc. v. Associated Press, supra, 299 U.S. at 277, 57 S.Ct. 197; N.A.A.C.P. v. Patty, 159 F.Supp. 503, 519–520 (E.D.Va.1958), rev'd on other grounds, Harrison v. N.A.A.C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

" 'In a suit to enforce an alleged right, the value of the right sought to be gained determines the amount in dispute; for instance, in a suit to enjoin a particular regulation, the value of the right of plaintiff to carry on his business freed from the restraint of the regulation is the test of jurisdiction. (Packard v. Banton, 264 U.S. 140, 142, 44 S.Ct. 257, 68 L.Ed. 596.) This may be very much less than the value of the business.' " Federated Mutual Implement & Hardware Ins. Co. v. Steinheider, supra, at 738.

■ It is also settled that, in an action to enjoin the enforcement of a regulation alleged to be invalid because of its continuing harmful effect upon the plaintiff, the jurisdictional amount is not determined solely by damages incurred prior to the suit, but also by loss likely to flow from continued interference. McNutt v. General Motors Acceptance Corp., supra, at 181, 56 S.Ct. 780; Indian Territory Oil & Gas Co. v. Indian Territory Illuminating Oil Co., 95 F.2d 711, 713 (10 Cir. 1938).

■ Courts have recognized that the value of the right sought to be protected may not be susceptible to precise monetary measurement. Food Fair Stores, Inc. v. Food Fair, Inc., 177 F.2d 177, 182 (1 Cir. 1949). Cf., Range Oil Supply Co. v. Chicago, Rock Island & Pacific R. Co., 248 F.2d 477, 479 (8 Cir. 1957); N.A.A.C.P. v. Patty, supra, 159 F.Supp. at 519–520.

We now turn to the jurisdictional facts.

Reserve is an insurance company engaged in writing medical, surgical, hospital and loss of life and time insurance. It is authorized to conduct business in the State of Nebraska. It has outstanding in Douglas County, Nebraska (in which Omaha is situated), and in adjacent counties in Nebraska and in the State of Iowa, hundreds of insurance policies providing indemnity for the expenses of hospital confinement, medical treatment, surgery, loss of life, limb, sight and time caused by accidental bodily injury or sickness.

Appellant owns and operates Hospital in Omaha and there receives, among its patients, many of Reserve's policyholders.

In the year 1959 Reserve paid approximately $14,000 in benefits to its policyholders who had been patients in Hospital. In 1960 Reserve paid over $19,400 in benefits, of which over $9,700 was paid directly to Hospital on assignments. Claims approximating $7,000 were filed with Reserve during the first seven months of 1961, prior to the filing of the

complaint herein on August 4, 1961. From August 4, 1961 to date of trial, March 23, 1964, claims aggregating over $60,000 have been made against Reserve by patients who had been confined in Hospital.

Reserve's records show that the premiums received on health and accident hospitalization policies and the claims paid on such policies during the years 1958 through 1963 were:

|  | "Premiums Paid | Claims Paid |
|---|---|---|
| 1958 | $848,655.24 | $401,420.82 |
| 1959 | 858,016.08 | 457,103.65 |
| 1960 | 791,140.99 | 449,996.24 |
| 1961 | 753,084.15 | 405,293.51 |
| 1962 | 667,234.34 | 411,062.75 |
| 1963 | 644,921.29 | 382,315.34" |

Each applicant to Reserve for a policy executed a waiver of privilege and direction as follows:

"All * * * hospitals * * * at which I have been a patient or an out-patient are hereby directed to allow any representative of Reserve Life Insurance Company to personally examine and to make a copy of any and all records relative to my physical and mental condition past, present and future * * *."

Pursuant to the provisions of § 71–2024, Neb.R.R.S.1943, Hospital has kept accurate and complete records for all of its patients, including those who were, and are, holders of policies issued by Reserve. However, on January 24, 1961, Hospital refused to permit an authorized agent of Reserve to inspect the records of one claimant policyholder, even though a signed authorization of the patient was presented to Hospital. Written demand, dated March 8, 1961, was then unavailingly presented to Hospital and on June 22, 1961, the authorized agent of Reserve was denied the right to inspect the records of seven claimant policyholders. Shortly thereafter the present action was brought to compel Hospital to permit inspection of its records and to enjoin it from withholding such right in the future.

The evidence shows that, in processing claims of policyholders, an examination of the hospital records is often necessary to a proper determination of the liability of Reserve. As a result of Hospital's refusal to permit Reserve to make the inspection, Reserve has made payments to policyholders on all claims submitted subsequent to the filing of this action conditionally, with reservation of the right to question liability and demand refund should inspection of the original hospital records show no liability in whole or in part.[2]

The manager of the Hospital Benefit Department of Reserve testified that, as a result of its inability to inspect the records of Hospital and its consequent payment of claims on a conditional basis, Reserve had "quite a bit of controversy" with, and letters, threats and inquiries from, its policyholders; that there has been a decline in premium income; and that there has been a deteriorating effect upon sales. This witness expressed the view that if Reserve were forced to require its policyholders who were patients in Hospital,[3] to bring suit in order to enable it to examine hospital records, the adverse publicity would force Reserve out of business in Nebraska and the damage to Reserve would equal the value of its Nebraska business which is in the "neighborhood of $300,000 to $350,000."[4]

2. A portion of the more than $60,000 in claims, which have been made since the suit was filed, had been assigned to Hospital. No payment has been made to Hospital on the assigned claims.

3. After this action was filed all the Omaha hospitals, except two, closed their records. Prior to this action all of the Omaha hospitals except appellant and one other permitted the inspection.

4. This witness stated that the "rule of thumb" applied in arriving at the value of an insurance business of this type, is the sum of approximately six to six and one-half months of premium income. Using this standard, the witness arrived at the value of Reserve's business in Nebraska.

■ After careful analysis of the question, in light of the applicable legal principles, we conclude there was sufficient evidence to support the court's finding that more than $10,000 is in controversy. In summary, this factual picture appears: (1) Reserve's annual premium income from Nebraska policyholders is substantial; (2) claims of policyholders, who have been patients in Hospital from August 4, 1961, to the time of trial, have exceeded $60,000; (3) in order to promptly and accurately process the claims it is often necessary to examine the original records of Hospital; (4) Hospital has unequivocally refused to recognize the authorization of its patients to permit inspection by Reserve; (5) a controversy exists between Reserve and its claimant policyholders because of its inability to fully process claims; and (6) Reserve's premium income has decreased.

Reserve was obligated to show by a preponderance of the evidence that the statutory jurisdictional amount was in controversy. Of course, the evidence does not establish the precise value of the right Reserve seeks to enforce but, as the cases have illustrated, such an evaluation is not required. We are satisfied that the evidence affords a sufficient factual foundation for the finding that jurisdiction exists.

We pass now to the second issue. As we have seen, Hospital has refused to allow Reserve's duly authorized representatives to inspect and copy the original hospital records. It does, however, permit inspection and copying under the supervision of a physician. Additionally, it has always furnished Reserve, upon request, with an "abstract" of any patient's record. The abstract is compiled by an employee of Hospital and contains: the date of the patient's admission and discharge; name of attending physician; patient's complaints; patient's present illness; any diagnoses; surgical procedures; results of the patient's physical examination; laboratory and X-ray data; electro-cardiograph reports, and any surgical pathology reports.

The district court, upon consideration of the evidence and the contentions of Hospital, found that each patient has a property right in his hospital records and that "he, or an authorized representative should have the right to inspect these records"; that the inspection "represents an integral and important facet of [Reserve's] business"; and that Hospital's refusal "is an unlawful interference with [Reserve's] business." In its memorandum opinion, the court qualified the right to inspect "where the bona fide and good faith judgment of the patient's doctor dictates and he certifies under oath that the records not be released to the patient or his authorized representative in the best interests of the [patient's] health."

Reserve asserts that its authorized representatives have a right to inspect the original hospital records, unaccompanied by a physician, prior to the company's determination of its liability on claims of any patient-policyholders. It claims that the "abstracts", which are presently furnished it by Hospital in lieu of allowing Reserve to inspect, are prepared by persons not acquainted with the needs of the insurance business and, therefore, that the "abstracts" are incomplete, and unsatisfactory for Reserve's use in determining liability on claims. Furthermore, it would be a hardship on both physicians and Reserve's representatives to require the presence of a physician whenever an original hospital record is inspected.

On the other hand, Hospital argues that, although the Health Department of the State of Nebraska requires all hospitals to keep records, the records are not public property and are not open to inspection by insurers in the absence of specific legislation to the contrary. To support its contention, Hospital relies primarily upon Pyramid Life Ins. Co. v. Gleason Hospital, Inc., 188 Kan. 95, 360 P.2d 858 (1961), in which appellant says "the facts are identical with those in the [case] under consideration." There, the insurer, discovering that it had paid some allegedly fraudulent claims, sought to determine whether any other claims which had been paid were also fraudulent.

It brought an action to enjoin Gleason Hospital from refusing to allow it to inspect all of the charts of policyholders who had been confined in Gleason Hospital. The trial court sustained defendant hospital's demurrer to plaintiff's third amended complaint. Affirming, the Supreme Court of Kansas was careful to point out that it had not been alleged that any patient of the hospital, or any authorized representative on his behalf, or the insurance company was "ever refused an inspection or a copy of the hospital record *at the time of presentation and settlement of his insurance claim.*" Id. at 860. The court held that, the claims having previously been settled, Pyramid's demand was, in the guise of a permanent mandatory injunction, "for a *bill of discovery*" which is not authorized by the Kansas Code of Civil Procedure or in the practice of the Kansas courts. Because of the vital distinguishing features of the Gleason case, we do not consider it to be reliable authority for appellant's position in this case.

General and specialized Nebraska hospitals are required by law to keep accurate and complete medical records for all patients. See Article IX B of Regulations & Standards for Hospitals & Maternity Homes, which was promulgated by the Department of Health of the State of Nebraska pursuant to the provisions of § 71–2024 Neb.R.R.S.1943. Hospital stipulated that it is bound by and keeps records in accordance with the foregoing regulation. Such records are at least, quasi-public, and may be inspected by any person having an "interest such as would enable him to maintain or defend an action for which the * * * record sought can furnish evidence or necessary information." Pyramid Life Ins. Co. v. Masonic Hosp. Ass'n, 191 F.Supp. 51, 54 (W.D.Okla.1961). Cf., Wilson v. United States, 221 U.S. 361, 380–382, 31 S.Ct. 538, 55 L.Ed. 771 (1911); Dossett v. Porter, 161 F.2d 839 (6 Cir. 1947).

It can hardly be gainsaid that an insurance company against whom claims for medical, surgical, hospital, and other expenses have been made has an indisputable interest in determining the validity and the extent of liability on any given claim. Hospital records are, without dispute, a major source of the information necessary to a determination of that insurer's liability. Therefore, it seems to us that it is an indispensable right of the insurer, with proper patient authorization, to have access to such information, including quasi-public hospital records, as will enable it to evaluate its liability, if any.

This does not mean, of course, that an insurance company has an absolute right to inspect hospital records even though they may be quasi-public. Such records are deemed to be privileged within statutes such as § 25–1206 Neb.R.R.S. 1943, which render a physician incompetent to testify regarding matters of which he acquired knowledge while acting in his professional capacity. O'Donnell v. O'Donnell, 142 Neb. 706, 7 N.W.2d 647, 650 (1943).

The purpose of the physician-patient privilege "is not absolutely to disqualify the physician from testifying, but to enable the patient to secure medical aid without betrayal of confidence. The patient may therefore waive objection * * *. In other words, the privilege is the privilege of the patient, and not of the physician * * *." Falkinburg v. Prudential Ins. Co., 132 Neb. 831, 273 N.W. 478, 481 (1937); George v. Guarantee Mut. Life Co., 144 Neb. 285, 13 N.W. 2d 176, 182 (1944); Western Travelers' Accident Ass'n v. Munson, 73 Neb. 858, 103 N.W. 688, 691, 1 L.R.A.,N.S., 1068 (1905). Since the patient is able to waive the privilege in regard to disclosure of information by the physician, it would be illogical and unreasonable to deny him the right to waive that same privilege with respect to inspection of his hospital records. See 58 Am.Jur., Witnesses, § 543 (relating to hospital records). The patient stands to benefit as much by making such a waiver in order to promptly insure settlement of his claim as he stands to benefit from being allowed to have his physician disclose information in particular instances.

There have been a number of cases in which insurers have been granted mandatory injunctions on facts similar to those with which we are here confronted. While these are, for the most part, unreported cases; Reserve Life Ins. Co. v. Edge (Dist.Ct.M.D.Ala., No. 1212–N 1956); Reserve Life Ins. Co. v. Cleveland Memorial Hospital, Inc. (Dist.Ct.W.D. No.Car., No. 2038, 1962); Musman v. Methodist Hospital (Sup.Ct. of Marion County, Indiania, No. C–20151, 1956), the case of Pyramid Life Ins. Co. v. Masonic Hospital Ass'n, supra, is directly in point. In that case, the district court did grant the insurer's request for a mandatory injunction "enjoining and restraining defendants from preventing inspection and copying of hospital and medical records of patient-policyholders of the plaintiff who have been confined in the Cushing Municipal Hospital, * * by representatives of the plaintiff armed with authorizations signed by the patients or their representatives". 191 F. Supp. 51, at 53.

■ Hospital also suggests that to allow a hospitalization insurer to inspect all of the hospital records will greatly inconvenience both the hospital and physicians who work with the records. The inconvenience argument does not constitute a legal defense. The issue is not one of inconvenience, but whether the patient-policyholder has a sufficient interest in the records to waive the privilege which protects such records from inspection, and to authorize the insurer, which has the right to determine its liability for asserted claims, to inspect such records.

■ In summary, since Reserve has received authorization in each case from the patient having a proprietary interest in his own record, and since Reserve has a definite legitimate business need and is a proper party to inspect these quasi-public hospital records, there being no adequate legal remedy, the district court appropriately granted injunctive relief.

As we have noted, the district court, in its memorandum opinion, qualified the right to inspect "where the bona fide and good faith judgment of the patient's doctor dictates and he certifies under oath that the records not be released to the patient or his authorized representative in the best interests of the [patient's] health." However, the judgment entered pursuant to the court's opinion does not contain this qualification. The judgment appealed from is, therefore, modified to incorporate such qualification, and, as so modified, the judgment is affirmed.