Prince **HEYWARD** et al., Appellants,

v.

**PUBLIC HOUSING ADMINISTRA-TION** et al., Appellees.

**No. 16040.**

United States Court of Appeals
Fifth Circuit.

Nov. 30, 1956.

Constance Baker Motley, Thurgood Marshall, New York City, A. T. Walden, Atlanta, Ga., Frank D. Reeves, Washington, D. C., for appellants.

Shelby Myrick, Geo. C. Heyward, Myrick & Myrick, Savannah, Ga., for appellee Housing Authority of Savannah, Ga.

Donald B. MacGuineas, Atty. Dept. of Justice, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., Paul A. Sweeney, Atty., Dept. of Justice, Washington, D. C., for appellees, Public Housing Administration and Arthur R. Hanson.

Before HUTCHESON, Chief Judge, and BORAH and BROWN, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal from two orders entered by the district court dismissing an action brought by Prince Heyward and seventeen other Negro citizens of the United States, residents of Savannah, Georgia, in their own behalf and in behalf of other Negroes similarly situated, against two groups of defendants, (1) the Public Housing Administration,[1] and its Atlanta Field Office Director, Arthur Hanson, and (2) the Housing Authority of Savannah, Georgia,[2] and its officers,[3] praying for a declaratory judgment, injunctive relief, and an award of $5,000 damages to each plaintiff against each defendant. The jurisdiction of the court below was invoked pursuant to 28 U.S.C. § 1331,[4] on the ground that the action arises under the Constitution and laws of the United States and more than $3,000 is in controversy, and 28 U.S.C. § 1343 (3),[5] on the ground that the plaintiffs seek redress for deprivation of their civil rights.

The gravamen of the complaint which was filed on May 20, 1954, is that defendants, as public officers, are jointly enforcing a policy of racial segregation in public low-rent housing projects in Savannah, in violation of the rights secured to plaintiffs by the Fifth and Fourteenth Amendments to the Federal Constitution, and the United States Housing Act of 1937, as amended,[6] the National Defense Housing Acts,[7] and the Civil Rights Statute.[8] Within the delay for answering, Savannah Housing Authority, hereinafter called SHA, and its officers filed a motion to dismiss the complaint and with reservation of their rights under the motion they also filed an answer, a motion for a more definite statement, and a motion to strike certain portions of the complaint. The record reflects that no answer was filed by either Public Housing Administration, hereinafter called PHA, or Hanson. Approximately one year after the complaint was filed and on May 5, 1955, plaintiffs served upon PHA, Hanson, SHA and Stillwell, a request for admission of facts to which SHA and Stillwell timely replied, but no response there-

1. A corporate agency and instrumentality of the United States established pursuant to Reorganization Plan No. 3, effective July 27, 1947. 5 U.S.C.A. following section 133y–16.

2. A corporate body organized under the laws of the State of Georgia which administers the low-rent housing program of the City of Savannah. 99 Georgia Code Ann. 1101 et seq.

3. W. Horace Stillwell, Herbert L. Kayton, Wm. H. Stephens, James A. Byington, J. R. Burney and Joseph F. Griffin, Jr.

4. 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States."

5. 28 U.S.C. § 1343 provides: "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: * * * (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

6. 42 U.S.C.A. § 1401 et seq.

7. 42 U.S.C.A. § 1501 et seq.

8. 42 U.S.C.A. § 1983.

to was ever filed by either PHA or Hanson. However, on June 14, 1955, PHA and Hanson filed a motion for summary judgment and, in support thereof, an affidavit of Charles E. Slusser, Commissioner of PHA. Thereafter, and prior to the hearing on the defendants' respective motions for summary judgment and to dismiss, plaintiffs propounded interrogatories to Stillwell, Secretary-Director of SHA, which were duly answered by him. On September 29, 1955, which was one day prior to the date fixed for the hearing on defendants' previously filed motions, plaintiffs filed a written notice which recited that they would in accordance with the attached motion move on October 10, 1955, for a summary judgment against SHA and its officers. At the hearing on defendants' motion which was had on the following day, plaintiffs' counsel asked the court to consider also at that time their proposed motion for summary judgment, and this request was denied. Thereafter, and upon consideration of the arguments and briefs and without entertaining a hearing on plaintiffs' motion for summary judgment, the court on October 15, 1955, issued an order granting the motion of PHA and Hanson for summary judgment, and on October 21, 1955, granted the motion of the remaining defendants to dismiss. This appeal followed.

In considering the propriety of the district court's action, it would now appear in order to set forth the theory of plaintiffs' complaint and the essential allegations made in support of their claim for relief. The complaint in substance alleges: that PHA and SHA, pursuant to the provisions of the Housing Act of 1937, as amended, have constructed and agreed to construct, operate and maintain several public housing projects in the City of Savannah, some of which are and will be located on the site of the residences or former residences of the plaintiffs; that pursuant to the provisions of the National Defense Housing Acts, PHA holds title to certain other public housing projects in Savannah which are operated by SHA as agent for PHA; and that the entire public housing program in Savannah has been jointly planned, constructed, operated, and maintained by PHA and SHA pursuant to the provisions of the aforementioned housing acts and the laws of the State of Georgia. In this connection plaintiffs allege that in administering the entire public housing program PHA and SHA have determined upon and presently enforce an administrative policy of racial segregation resulting in the designation of certain projects for occupancy by qualified white families and in the designation of other projects for occupancy by qualified Negro families; that it is the practice and policy of each of the defendants to require applicants for public housing to state a preference for admission to a particular project and "that this information is put on the application blank prepared for the purpose of taking applications for public housing and that such information is in fact and effect a device for discriminating against the Plaintiffs and the members of the class which they represent, solely because of their race or color;" and that pursuant to the racial segregation policy, plaintiffs and others similarly situated, solely because they are Negroes, are denied the rights and preference to occupy housing projects, including those operated by SHA as agent for PHA, which have been limited to white occupancy by the defendants. It is also alleged that each of the plaintiffs has been or will be displaced from the site of his or her residence and adjacent areas which have been condemned by or on behalf of SHA for the purpose of constructing thereon, certain low-rent housing projects, one of which is known as Fred Wessels Homes; that each of the plaintiffs meets all of the requirements established by law for consideration for admission and for admission to the project built on or to be built on the site of his or her former residence, and to certain other public housing projects in Savannah all of which have been limited by defendants to occupancy by white families. The complaint further alleges that white families which have not been

displaced from the site of any low-rent housing project or slum-clearance project initiated after January 1, 1947, and whose housing needs are not or were not as urgent as those of the plaintiffs have been admitted to Fred Wessels Homes and to other projects limited to white occupancy, whereas each of the plaintiffs desires to live in Fred Wessels Homes, and each has been denied admission to Fred Wessels Homes, solely because of race and color, despite the fact that at the time said project was ready for occupancy, each of the plaintiffs had a preference for admission by virtue of the fact that each was or is among those having the greatest urgency of need among low-income families eligible for public housing in Savannah. Finally, it is alleged that each of the defendants is under a duty to discharge his or its duties in conformity with the Constitution, laws and public policy of the United States, and that plaintiffs have no adequate remedy at law to protect their "civil and constitutional right not to be discriminated against by the State and Federal Governments, solely because of race, in leasing an interest in real property." The relief prayed is that the court declare the rights and other legal relations of the parties as to the subject-matter in controversy,[9] and that the court enjoin defendants and their agents: (1) from re-

---

**9.** The prayer of the complaint contains the following:

"2. Enter a final judgment and decree declaring that the Defendants and each of them:

"(a) may not refuse to accept the applications of the Plaintiffs for admission to public housing projects limited to occupancy by white families;

"(b) must give the Plaintiffs' applications for public housing the same consideration as is given to the applications of white families for public housing;

"(c) must not discriminate against the Plaintiffs, solely because of race or color, in certifying applicants for public low-rent housing;

"(d) must not discriminate against the Plaintiffs and other Negroes similarly situated with respect to their admission to any unit in any public housing project, solely because of race and color;

"(e) must extend the statutory preferences for admission to any available unit in any public housing project in the City of Savannah, Georgia, without considering the race or color of the Plaintiffs and all other Negroes similarly situated;

"(f) may not lawfully pursue a policy of racial segregation in public housing by constructing, operating and maintaining separate public housing projects for eligible Negro and white families or by segregating families on the basis of race within a project;

"(g) may not lawfully classify applicants for public housing on the basis of race for any purpose with respect to their applications for, or admissions to, or residence in any public housing project;

"(h) may not require Plaintiffs to state a preference for admission to a particular project upon applying for public housing,

"(i) may not lawfully determine upon and enforce an administrative policy of racial segregation in public housing projects which results in the exclusion of Plaintiffs and other similarly situated from housing units for which they are otherwise eligible and for which they have a preference for admission, solely because of race and color, especially where such projects are constructed, operated or maintained with federal financial and/or other federal assistance; and declaring,

"(j) that Defendant Public Housing Administration, its agents, employees, representatives and successors may not give federal financial assistance and other federal assistance to the Defendant Housing Authority of Savannah, Georgia for the construction, operation and maintenance of any public housing project from which the Plaintiffs and other Negroes similarly situated will be excluded and denied consideration for admission and denied admission solely because of race and color; and

"(k) declaring that enforcement of racial segregation in public housing violates rights secured to the Plaintiffs, and other Negroes similarly situated, by the due process clause of the Fifth Amendment to the Federal Constitution, the equal protection and due process clauses of the Fourteenth Amendment to the Federal Constitution and Title 8, United States Code, Section 42 and Title 42, United States Code, Section 1410(g) and 1415(8) (c) and 1501 et seq."

fusing to accept plaintiffs' applications for certain public housing projects; (2) from refusing to certify plaintiffs as eligible for certain housing projects; (3) from refusing to admit plaintiffs to any public housing unit for which they are eligible, solely because plaintiffs are Negroes; (4) from pursuing a policy of racial segregation in public housing; (5) from refusing to extend the statutory preferences for the admission of plaintiffs to certain projects; (6) from classifying plaintiffs and others similarly situated on the basis of race for any purpose with respect to their applications for or admissions to, or residence in, any public housing project; (7) from requiring plaintiffs to state a preference for admission to a particular project upon making application for admission to any public housing project; and, (8) from segregating plaintiffs within any project to which they are admitted. Additional injunctive relief is prayed to enjoin PHA from giving federal financial and other federal assistance to SHA for the construction, operation, or maintenance of any project which excludes plaintiffs and other Negroes similarly situated, solely because of race or color. Finally, plaintiffs pray that each of them be awarded damages in the amount of $5,000 against each and all of the defendants, and that the Court grant such other and additional relief as may appear to be equitable and just.

The district court granted the motion of defendants PHA and Hanson for summary judgment and dismissed the complaint as to them on the following grounds: (1) that the Court lacks jurisdiction under 28 U.S.C. § 1331 because the complaint fails to show that the matter in controversy as to each plaintiff exceeds $3,000; (2) that the Court lacks jurisdiction under 28 U.S.C. § 1343(3) because defendants were not acting under color of any state law; (3) that the Court lacks venue of the action under 28 U.S.C. § 1391 in that PHA is not a corporation doing business in the Southern Judicial District of Georgia within the meaning of the venue statute; (4) that the plaintiffs lack sufficient legal interest in the expenditure of federal funds by PHA to give them standing to challenge the validity of such expenditure; (5) that PHA, by placing in its contracts with SHA a requirement that the latter shall extend the preference in occupancy required by 42 U.S.C.A. § 1410(g) has fulfilled its obligations under that statutory provision; (6) that in view of the fact that PHA has left to the determination of SHA the policy as to whether low-rent housing projects shall be occupied by any particular race, there is no justifiable controversy between plaintiffs and PHA and Hanson; and (7) that in view of the fact that Hanson has no official function or duty with respect to dispensing or withholding of federal funds to SHA plaintiffs failed to make out a claim against him.

The district court also dismissed the complaint as to SHA and its officers on the ground that since it appears from the complaint that plaintiffs are afforded equal though separate housing facilities, their civil and constitutional rights have in no wise been violated.

■ Considering first the order dismissing the complaint as to PHA and Hanson, we are in no doubt that the trial court erred in ruling that the complaint fails to show that the matter in controversy as to each plaintiff exceeds the jurisdictional amount and that the court lacked venue of the action. In the first place we take it to be fundamental that a motion for Summary judgment applies to the merits of a claim, or to matter in bar, but not to matter in abatement.[10] Motions suggesting improper venue or lack of jurisdiction for failure to show jurisdictional amount present clearly matters in abatement only which must be raised not by a motion for summary judgment, but by motions under Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C. In this connection it is important to note that under the terms of

10. See Moore's Federal Practice, 2 Ed., Vol. 6, p. 2025.

Rule 12(b), such defenses are not integrated with the motion for summary judgment.[11] But apart from the fact that these questions were improperly raised and disposed of under Rule 56, Federal Rules of Civil Procedure, and the further fact that the district judge improperly considered the merits of a cause in which he was of the declared opinion that jurisdiction was wanting, we think it plain that the allegations of the complaint adequately establish that the requisite jurisdictional amount is here present. The applicable rule with respect to the amount in controversy is relatively simple and is this: When a complaint contains a formal allegation that the amount in controversy exceeds $3,000 and is not traversed, such allegation is deemed sufficient to confer jurisdiction on the federal court, unless it appears to a legal certainty that the other allegations of the complaint so qualify or detract from it that it cannot fairly be said that jurisdiction appears on the face of the complaint. See Kvos, Inc. v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183. Here, the allegation of jurisdictional amount was not traversed. To the contrary, on the face of their motion for summary judgment these defendants asserted that "there is no genuine issue as to any material fact", and the supporting affidavit does not challenge or contradict the amount alleged to be in controversy. And we cannot on this record say to a legal certainty that the matter in dispute does not involve the requisite jurisdictional amount. As to venue of the action we deem it sufficient to say that there appears in the record no formal objection to venue, and PHA by filing the motion for summary judgment and thus putting at issue the merits of the case effectively waived whatever objection to venue as it may have had.

■ Coming now to the plaintiffs' claim for relief under the Civil Rights Statute, we find ourselves in accord with the trial court's ruling that neither PHA nor Hanson is acting under color of any State law within the requirements of 28 U.S.C. § 1343(3). Plaintiffs' case against PHA is bottomed on the proposition that the regulation and control exercised by the federal agency is so extensive and the relationship between the federal agency and SHA so intimate that the actions of the one must be deemed to be the acts of the other and pursuant to State law or custom. It clearly appears, however, from the pleadings, the affidavit of Commissioner Slusser and the several exhibits attached thereto, as well as from the state and federal statutes themselves that PHA and Hanson acted pursuant to the federal statutes and have not acted or purported to act under any State law, regulation, custom or usage.

■ We are also in agreement with the findings of the district judge which fully support his conclusion that plaintiffs had failed to make out a claim against Hanson upon which relief could be granted. The evidence clearly showed that Hanson has no official function or duty with respect to dispensing or withholding of federal funds to SHA. The affidavit of the Commissioner of PHA shows that Hanson was not responsible for final approval of any local development program, and "in no instance and under no circumstances does the Field Office Director or any other Field Office Official disburse to, or withhold from, any local authority Federal funds pur-

11. Rule 12(b) provides in part, as follows: "* * * the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue * * * (6) failure to state a claim upon which relief can be granted * * * If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 * * *."

suant to [contracts] between the Public Housing Administration and the local authority."

■ There remains for consideration the question of whether PHA was entitled to summary judgment on plaintiffs' claim arising under the Constitution and laws of the United States. The court below answered this question in the affirmative but did not mention the statutes involved. Insofar as the complaint challenges acts of PHA in connection with Lanham Act, 42 U.S.C.A. § 1521 et seq. national defense housing projects, we think the action was properly dismissed for the reason that it is a suit against a federal agency which is not subject to be sued. 42 U.S.C.A. § 1404a. Furthermore, the evidence shows that PHA does not make any financial contributions with respect to such defense housing projects and decisions as to occupancy of these projects are solely the responsibility of SHA to which they have been conveyed.

■ But with reference to PHA functions in connection with the low-rent housing projects, we think the trial judge erred in concluding that PHA was entitled to summary judgment. This court has consistently adhered to the view that a summary judgment should only be given when it is quite clear what the truth is. American Insurance Co. v. Gentile Bros. Co., 5 Cir., 109 F.2d 732. One who moves for summary judgment has the burden of demonstrating clearly that there is no genuine issue of fact, and any doubt as to the existence of such an issue is resolved against him. In the case at bar we cannot say that PHA sustained its burden of proving that there existed no genuine issue of fact. Here, as in Heyward v. Public Housing Administration, 94 U.S.App.D.C. 5, 214 F.2d 222, plaintiffs are seeking an adjudication whether, without violating rights secured to them under the Fifth Amendment and the federal housing acts cited above, PHA could give federal financial and other assistance to SHA in connection with projects from which plaintiffs are denied consideration for admission and ad-

mission solely because of their race and color. While it is true that PHA has not been charged by Congress with the duty of preventing discrimination in the leasing of housing project units, what these plaintiffs are saying in effect is that the federal agency is charged with that duty under the Fifth Amendment, and that that duty should be forced upon PHA by the courts through the medium of injunctive process. The record shows that the involvement of PHA in the low-rent housing program in Savannah consists of a contractual guarantee to various banks and lending institutions that money advanced by them for the construction of the projects by the local agency will be repaid, incidental to which is the prescribing of conditions upon which the PHA will undertake to render such assistance. These conditions consist of certain requirements which undoubtedly touch the projects at a great many points. They have to do with architectural and developmental plans, the amount and terms of financial aid and continuing obligations to render financial assistance. With reference to occupancy policies, it is plain that the challenged policy, though initiated by SHA, has been approved by PHA, by way of contractual arrangements between the state and federal agencies.

The statutory preference under which plaintiffs claim the right to occupy the low-rent housing projects provides, in 42 U.S.C.A. § 1410(g), that the following preferences shall be extended in the selection of tenants:

" * * * First, to families which are to be displaced by any low-rent housing project or by any public slum-clearance or redevelopment project initiated after January 1, 1947 or which were so displaced within three years prior to making application to such public housing agency for admission to any low-rent housing * * * ."

and, in 42 U.S.C.A. § 1415(8) (c),

"in the selection of tenants (i) the public housing agency shall not discriminate against families, other-

wise eligible for admission to such housing, because their incomes are derived in whole or in part from public assistance and (ii) in initially selecting families for admission to dwellings of given sizes and at specified rents the public housing agency shall (subject to the preferences prescribed in section 1410(g) of this title) give preference to families having the most urgent housing needs, and thereafter, in selecting families for admission to such dwellings, shall give due consideration to the urgency of the families' housing needs * * * ."

As we have noted above, the complaint sets forth allegations which, if proven, would show a failure on the part of PHA to comply with the above statutory tenant selection policy, and this would constitute a violation of plaintiffs' rights to due process under the Fifth Amendment. The view thus expressed is in accord with the Supreme Court decision in Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 695, 98 L.Ed. 884, wherein it was said: "In view of our decision that the Constitution prohibits the States from maintaining racially segregated public schools, it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government." With reference to the aforementioned statutory occupancy policy, Commissioner Slusser in his affidavit states that the "policy of Public Housing Administration with respect to occupancy of any low-rent housing project is that, subject only to the provisions of the Housing Act of 1937, as amended, and regulations promulgated by Public Housing Administration thereunder, decisions as to occupancy are the administrative responsibility of the Housing Authority of Savannah." The regulations to which Slusser refers are to be found in PHA's Housing Manual, dated February 21, 1951, at Section 102.1, and they are as follows:

"The following general statement of racial policy shall be applicable to all low-rent housing projects developed and operated under the United States Housing Act of 1937, as amended.

"1. Programs for the development of low-rent housing, in order to be eligible for PHA assistance, must reflect *equitable* provision for eligible families of all races determined on the approximate volume of their respective needs for such housing.

"2. While the selection of tenants and the assigning of dwelling units are primarily matters for local determination, urgency of need and the preference prescribed in the Housing Act of 1949 are the basic statutory standards for the selection of tenants." (Emphasis supplied.)

Thus, at the time this action was filed the regulations of PHA required that any local program for the development of low-rent housing reflect equitable provision for eligible families of all races, but did not require that housing be made available on a nonsegregated or nondiscriminatory basis. Plaintiffs' argument is that under these regulations the local authority would have no right to admit Negro applicants to vacant units, no matter what their priority is under the statutory preference provision, if to do so would deviate from the application of the "equity" formula which is written into each of the contracts between the federal and local agencies. Furthermore, there is nothing in the affidavit, exhibits, or pleadings filed in this cause which indicates that PHA will or will not continue to require SHA to abide by the above regulation.

The answer of SHA and its officers, on the other hand, categorically denies that plaintiffs were qualified for or had been denied any statutory preference for admission to public housing projects, or that plaintiffs were required to state a preference for admission to a particular project. And the averment is made that the low-rent housing projects are con-

structed, operated and maintained solely by SHA and not by PHA or jointly with PHA; that separation of white and colored families in projects is not based solely upon the fact that the colored tenants are Negroes, but largely to preserve the peace and good order of the community; and that the rights of the white tenants which are guaranteed by the Fifth and Fourteenth Amendments to the Constitution and the laws of the United States would be violated if integration of whites and Negroes were to be forced. This being the state of the record we think it plain that no convincing showing has been made that plaintiffs could not prevail under any circumstances, nor do the facts show a right to judgment with such clarity as to leave no room for controversy. Cf. Barron and Holtzoff, Federal Practice and Procedure, Vol. 3, p. 75.

Moreover, as was stated by the Supreme Court in Kennedy v. Silas Mason Co., 334 U.S. 249, 257, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347, summary procedures "present a treacherous record for deciding issues of far-flung import." Cf. Pacific American Fisheries v. Mullaney, 9 Cir., 191 F.2d 137. Here, we have an extremely important question, undoubtedly affecting a large percentage of the low-cost housing development programs, and ultimately affecting the living standards of a great number of persons, white and colored, who are in urgent need of decent, safe and sanitary dwellings. No conclusion in such a case should prudently be rested on a indefinite factual situation and especially should no declaratory judgment or injunction issue, if there should be occasion to do so, on anything but clear-cut judicially determined facts.

Turning now to the order which dismissed the complaint as to SHA and its officers for failure to state a claim upon which relief could be granted, appellants insist that the district court's holding was plain error and may not stand. We agree with appellants. Viewing the complaint in the light most favorable to appellants and with every intendment regarded in their favor, we think that the complaint sets forth a claim under the Civil Rights Statute, and that claim is: that appellants were not permitted to make application for any project limited to white occupancy, that they are denied the right to lease housing facilities provided by public funds under conditions set forth in the statute and equal to those imposed upon white families, and that such action on the part of SHA and its officers constituted a deprivation under color of State law, custom, or usage of the rights guaranteed them by the Fourteenth Amendment to the Constitution and the federal housing acts. Accordingly, we think it plain that the complaint should not have been dismissed on motion without a hearing on the merits, where, as here, it does not appear to a certainty that plaintiffs would be entitled to no relief under any state of facts which could be proved in support of their claim.

The order granting summary judgment to PHA and Hanson is accordingly affirmed in part and reversed in part, and the order dismissing the action against SHA and its officers is reversed, and the case is hereby remanded to the district court for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded.