**OPELIKA NURSING HOME, INC., a Corporation, Phenix City Nursing Home, Inc., a Corporation, Dunn Rest Home, Inc., a Corporation, Covington Manor, Inc., a Corporation, Roland Wade and Elmer Waide, Partners, doing business as Terrace Manor Convalescent and Geriatric Care Home, Plaintiffs,**

v.

**Elliot L. RICHARDSON, Secretary of the United States Department of Health, Education and Welfare, and Ira L. Myers, State Health Officer for the State of Alabama, Defendants.**

Civ. A. No. 3180-N.

United States District Court,
M. D. Alabama, N. D.

Jan. 29, 1971.

Charles H. Volz, Jr., Volz, Capouano, Wampold & Prestwood, Montgomery, Ala., and John M. Broeker, Haverstock, Gray, Plant, Mooty & Anderson, Minneapolis, Minn., for plaintiffs.

Ira DeMent, U. S. Atty., and F. E. Leonard, Jr., Asst. U. S. Atty., Montgomery, Ala., for Elliott L. Richardson.

MacDonald Gallion, Ala. Atty. Gen., and Herman H. Hamilton, Capell, Howard, Knabe & Cobbs, Sp. Asst. Atty. Gen., Montgomery, Ala., for Ira L. Myers.

## ORDER

JOHNSON, Chief Judge.

Plaintiffs bring this class action on their own behalf and on behalf of all other nursing home operators in the State of Alabama presently participating in the Medical Assistance Programs established by Title XIX of the Social Security Act, 42 U.S.C.A. § 1396 et seq. (hereinafter referred to as "Medicaid" Program). In their complaint, filed with this Court on September 23, 1970,

plaintiffs challenge the constitutionality of two Department of Health, Education and Welfare (hereinafter HEW) regulations—45 C.F.R. 250.30(b) (3) (ii)[1] and 45 C.F.R. 249.31 [2]—on the ground that these regulations, which govern the method of payment to nursing home operators under the Medicaid Program, are inconsistent with and contrary to the intent of Congress as set forth in 42 U.S.C.A. § 1396a.[3] Alleging that the regulations deny them due process and equal protection of the laws, plaintiffs seek a preliminary and a permanent injunction restraining defendants from enforcing the regulations.

Defendants, Elliott L. Richardson, Secretary of the Department of Health, Education and Welfare, and Ira L. Myers, Acting State Health Officer for the State of Alabama, have each filed with the Court a "motion to dismiss" pursuant to Rule 12 of the Federal Rules of Civil Procedure. In their motions to dismiss, defendants argue that:

(1) This Court has no jurisdiction over the subject matter;

(2) This Court has no jurisdiction over defendant Richardson;

(3) Plaintiffs lack standing to bring this action; and

(4) Plaintiffs have failed to state a claim upon which relief can be granted.

The present submission is upon these motions, the response thereto by the plaintiffs, and the briefs and arguments of the parties.[4] For the reasons hereinafter appearing, only two of the grounds advanced by defendants will be discussed.

## JURISDICTION OVER THE SUBJECT MATTER

Plaintiffs allege that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.A. §§ 1331 and 1343.

■ While acknowledging that 42 U.S.C.A. § 1983 imposes civil liability only on persons acting under color of state law, plaintiffs argue that since "the actions of the Secretary (of HEW) influ-

1. 45 C.F.R. 250.30(b) (3) (ii) provides in pertinent part that:

*Skilled nursing home services, outpatient hospital services, and clinic services.* Customary charges which are reasonable. Schedules of payments established by the State agency shall not exceed the combined payments received by providers (for furnishing comparable services under comparable circumstances) from the intermediaries or carriers under Title XVIII and beneficiaries under Title XVIII of the Social Security Act.

2. 45 C.F.R. 249.31 provides that:

A State plan for medical assistance under Title XIX of the Social Security Act must provide that participation in the program will be limited to providers of service who accept, as payment in full, the amounts paid in accordance with the fee structure, except that, with respect to payment for care furnished in skilled nursing homes, existing supplementation programs will be permitted until January 1, 1971, where the State has determined and advised the Secretary of Health, Education and Welfare that its payments for skilled nursing

home services furnished under the plan are less than the reasonable cost of such services permitted under Federal regulations, and the State has, prior to 1971, provided the Secretary with a plan for phasing out supplementation within a reasonable period after January 1, 1971.

3. 42 U.S.C.A. § 1396a(a) (30) provides that:

(a) A State plan for medical assistance must—

\*     \*     \*     \*     \*

(30) provide such methods and procedures relating to the \* \* \* payment for care and services available under the plan as may be necessary \* \* \* to assure that payments \* \* are not in excess of *reasonable charges* consistent with efficiency, economy, and quality of care. (Emphasis added.)

4. Initially, it should be noted that this case may properly be heard by a single-judge district court. See William Jameson & Co. v. Morgenthau, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189 (1939); Sardino v. Federal Reserve Bank of New York, 361 F.2d 106, 114 (2d Cir.), cert. denied, 385 U.S. 898, 87 S.Ct. 203, 17 L.Ed.2d 130 (1966).

ence, and in effect, control state laws and regulations", the Secretary is acting under color of state law as defined in § 1983. This argument is lacking both in novelty and in merit. See Norton v. McShane, 332 F.2d 855, 862 (5th Cir. 1964), cert. denied, 380 U.S. 981, 85 S. Ct. 1345, 14 L.Ed.2d 274 (1965). In Heyward v. Public Housing Administration, 238 F.2d 689 (5th Cir. 1956), the Court found that:

> Plaintiffs' case against PHA [a federal agency] is bottomed on the proposition that the regulation and control exercised by the federal agency is so extensive and the relationship between the federal agency and SHA [the local or state agency] so intimate that the actions of the one must be deemed to be the acts of the other and pursuant to State law or custom. It clearly appears, however, from the pleadings, * * * as well as from the state and federal statutes themselves that PHA and Hanson acted pursuant to the federal statutes and have not acted or purported to act under any State law, regulation, custom or usage. [238 F.2d at 695]

Since plaintiffs have not alleged, and this Court is unable to find, any other federal statute which would give this Court jurisdiction under § 1343, the Court is compelled to hold that it cannot assume jurisdiction pursuant to § 1343.

Plaintiffs further allege that this Court has jurisdiction under 28 U.S.C.A. § 1331. There is no question but that plaintiffs' claim that the federal regulations herein under attack are unconstitutional arises under the Constitution and laws of the United States. Defendants contend, however, that plaintiffs have failed to demonstrate that the "amount in controversy" exceeds the sum of $10,000, exclusive of interest and costs.

■ Since defendants have placed in issue the "amount in controversy", plaintiffs have the burden of proving that the amount exceeds $10,000, exclusive of interest and costs. See Thomson v. Gaskill, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); Yoder v. Assiniboine and Sioux Tribes, 339 F.2d 360 (9th Cir. 1964). Since plaintiffs, in challenging the constitutionality of the regulations, do not allege that the regulations prevent them from conducting their businesses, the right to be protected in this case is the right to be free of the regulations. "The value of that right may be measured by the loss, if any, which would follow the enforcement of the rules prescribed." McNutt v. General Motors A. C., 298 U.S. 178, 181, 56 S.Ct. 780, 781, 80 L.Ed. 1135 (1936); see Bishop Clarkson Memorial Hospital v. Reserve Life Insurance Co., 350 F.2d 1006, 1008 (8th Cir. 1965).

■■ Plaintiffs admit, both in their complaint and in their brief, that they might receive more money in payments under the challenged regulations than under the old regulations in that "costs may be higher or lower than 'reasonable charges'." The fact that the application of the challenged regulations may or may not cause plaintiffs pecuniary loss renders their claim for damages too speculative to satisfy the "amount in controversy" requirement of § 1331.[5] Furthermore, the other claims made by the plaintiffs are either inapplicable[6] because said damages were not sustained by the plaintiffs or are too speculative.

Plaintiffs, in a further attempt to convince the Court that the "amount in controversy" has been satisfied, argue that this action is a "true" class action, and since there is a single title or right with a common and undivided interest, aggregation of claims is permitted.

---

5. It should also be noted that 45 C.F.R. 250.30(b) (3) (ii) became effective as of July 1, 1970, while 45 C.F.R. 249.31 did not become effective until January 1, 1971. The fact that plaintiffs' complaint was filed on September 23, 1970, further leads to the conclusion that any losses claimed by plaintiffs are too speculative to satisfy § 1331.

6. Plaintiffs, for example, argue that the new regulations will result in excessive administrative expenses to the federal and state governments.

The type of class action, i.e., whether it is a Rule 23(b) (1), (b) (2) or (b) (3) suit, is not dispositive of whether individual claims may be aggregated. 3B Moore's Federal Practice ¶ 23.95. On the facts of this case, the Court concludes that plaintiffs' claims are separate and distinct and may not be aggregated to provide the $10,000 jurisdictional amount in controversy. See Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); Heymann v. Sears, Roebuck & Co., 415 F.2d 327 (5th Cir. 1969); Potrero Hill Community Action Committee v. Housing Authority of San Francisco, 410 F.2d 974 (9th Cir. 1969); Alvarez v. Pan American Life Insurance Co., 375 F.2d 992 (5th Cir.), cert. denied, 389 U.S. 827, 88 S.Ct. 74, 19 L.Ed.2d 82 (1967).

Thus, plaintiffs have failed to satisfy their burden of proving that the amount in controversy exceeds $10,000. Since this Court does not have jurisdiction under § 1331 or § 1343, and since the Court can find no special jurisdictional statutes giving it jurisdiction over suits of this kind, the Court holds that it does not have jurisdiction over the subject matter of this action.[7]

## FAILURE TO STATE A CLAIM

Initially, the Court finds without merit plaintiffs' argument that the Secretary of HEW has no authority to issue regulations fixing the method of payment to nursing homes participating in the Medicaid Program. The Secretary of HEW is authorized to "make and publish such rules and regulations, not inconsistent with this chapter [7] as may be necessary to the efficient administration of the functions with which [he] is charged under this chapter." 42 U.S.C.A. § 1302. Nothing in the language or legislative history of § 1396 (which is included in Chapter 7) indicates an intent on the part of Congress to limit its broad grant of authority in § 1302 to the Secretary to issue regulations.

Nor is the Court persuaded by plaintiffs' claim that the implementation of the new regulation denies them due process of law. Plaintiffs have no vested right to one particular method of payment. The only right to which they are entitled is the right to a method of reimbursement which provides for payments which "are not in excess of reasonable charges consistent with efficiency, economy, and quality of care." 42 U.S.C.A. § 1396a(a) (30).

This leads to the main thrust of plaintiffs' complaint. They argue that the challenged regulations are inconsistent with 42 U.S.C.A. § 1396a and totally in excess of the Secretary's authority.

Section 1396a(a) (30) places a ceiling on the amount which may be paid for services rendered under the Medicaid Program, that ceiling being "reasonable charges consistent with efficiency, economy, and quality of care." 45 C.F.R. 250.30(b) (3) (ii), in implementing § 1396a(a) (30), provides that payments to skilled nursing homes under the Medicaid Program shall not exceed the payments received by providers under Title XVIII (Medicare Program) of the Social Security Act. Under Title XVIII, skilled nursing homes and other providers are entitled to the "reasonable costs" of their services. The question then is whether a method of reimbursement based on reasonable costs is included within the purview of § 1396a(a) (30).

Having reviewed the legislative history of § 1396, the other provisions found in the section and the briefs of the parties, it very clearly appears that the Secretary did not abuse his discretion in providing for a method of payment based on reasonable costs. The legislative history is vague and unclear as to what distinction, if any, Congress made between "reasonable costs" and "reasonable charges consistent with effi-

---

7. Nor does the Court have jurisdiction under 28 U.S.C.A. §§ 2201 and 2202. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

ciency, economy, and quality of care". See 1967 Code of Cong. & Admin. News, p. 3026. The Court concludes that the selection by the Secretary of a method of payment based on reasonable costs, as defined by the Secretary in various implementing regulations,[8] was well within his discretion.[9]

■ Furthermore, it should be remembered that in reviewing the Secretary's application of a statutory term, the Court "need not find that [his] construction is the only reasonable one, or even that it is the result [the court] would have reached had the question arisen in the first instance in judicial proceedings." Unemployment Comm'n v. Aragon, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946). The following language from the Supreme Court's opinion in Hardin v. Kentucky Utilities Co., 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968), is highly appropriate to the case *sub judice*:

> Given the innate and inevitable vagueness of the "area" concept and the complexity of the factors relevant to decision in this matter, we think it is more efficient, and thus more in line with the overall purposes of the Act, for the courts to take the T.V.A.'s "area" determinations as their starting points and to set these determinations aside only when they lack reasonable support in relation to the statutory purpose of controlling, but not altogether prohibiting, territorial expansion. [390 U.S. at 9, 88 S.Ct. at 656]

■ It further appears that 45 C.F.R. 249.31, which requires States with existing supplementation programs with respect to payments for skilled nursing home services to advise the Secretary prior to 1971 of their plans to phase out such supplementation within a reasonable time after January 1, 1971, is reasonable and consistent with § 1396. The Court's conclusion finds support in the legislative history of § 1396:

> Until such time as proper and adequate payments are made, a problem exists for those States which have been using the supplementation system as a means of providing the additional funds necessary as a result of the State's payment of less than the full costs of nursing home care. The committee has considered this matter carefully and has determined not to include any legislation dealing with this situation *upon the assurance* of the Department of Health, Education, and Welfare that existing supplementation programs will be permitted to continue until January 1, 1971, where a State determines and advises the Secretary that its payments for nursing home care are less than the reasonable cost of the care and services provided. Such States are expected to provide the Secretary, prior to 1971, with a plan for phasing out such supplementation during a reasonable period of time subsequent to January 1, 1971. [1967 Code Cong. & Admin. News, p. 3026, emphasis added.]

Thus, § 249.31, rather than being contrary to, is entirely consistent with the legislative intent of Congress.

It is the order, judgment and decree of this Court that defendants' motions to dismiss be and the same are hereby granted.

---

8. 20 C.F.R. § 405.429, for example, provides for an allowance of a reasonable return on equity capital invested and used in the provision of patient care as an element of the *reasonable cost* of covered services.

9. It appears from plaintiffs' briefs that their real dissatisfaction lies not with the Secretary's decision to implement a method of payment based on the reasonable cost standard of Title XVIII, but with the decision by Congress to provide that the method of payment under Title XVIII shall be based on reasonable costs. In other words, plaintiffs challenge the economic feasibility of any method of payment based on reasonable costs.