JOHNSON'S PROFESSIONAL NURS-
ING HOME et al., Plaintiffs-
Appellants,

v.

Caspar W. WEINBERGER, Secretary of
the United States Department of Health,
Education and Welfare, et al., Defend-
ants-Appellees.

OPELIKA NURSING HOME, INC., et al.,
Plaintiffs-Appellants,

v.

Caspar W. WEINBERGER, Secretary of
the United States Department of Health,
Education and Welfare, et al., etc., De-
fendants-Appellees.

Nos. 73-1020, 73-1561
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 11, 1974.

* Rule 18, 5th Cir.; Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,
5th Cir., 1970, 431 F.2d 409, Part I.

Eli H. Subin, Orlando, Fla., for plaintiffs-appellants Johnson Prof. Nursing Home and others.

Harvey E. Schlesinger, Asst. U. S. Atty., Chester Senf, Jacksonville, Fla., James G. Mahorner, Tallahassee, Fla., Robert E. Kopp, Robert S. Greenspan, U. S. Dept. of Justice, Washington, D. C., for defendants-appellees in No. 73–1020.

Alvin T. Prestwood, Montgomery, Ala., Thomas C. Fox, William A. Geoghegan, Washington, D. C., for plaintiffs-appellants Opelika Nursing Home and others.

Ira DeMent, U. S. Atty., Kenneth E. Vines, Asst. U. S. Atty., Montgomery, Ala., Herman H. Hamilton, Sp. Asst. Atty. Gen., Montgomery, Ala., David Epstein, General Litigation Section, Civil Div., U. S. Dept, of Justice, Sarah Wilcox, Gen. Counsel, HEW, Washington, D. C., William J. Baxley, Atty. Gen. of Ala., Montgomery, Ala., Robert E. Kopp, Robert S. Greenspan, Dept. of Justice, Washington, D. C., for defendants-appellees in No. 73–1561.

Before BELL, GODBOLD and GEE, Circuit Judges.

GEE, Circuit Judge:

In this appeal we decide the validity of two regulations promulgated by the Secretary of HEW to govern state Medicaid payments to skilled nursing homes. With 45 C.F.R. § 250.30(b)(3)(ii), the Secretary limited Medicaid payments to skilled nursing homes to "reasonable costs" as defined by the standards for such payments under Medicare. And with 45 C.F.R. § 250.30(a)(6) he sought to gradually eliminate "supplementation" programs which allow payments to nursing homes by a patient's friends or relatives, who are not legally obligated to contribute to the Medicaid recipients support and from a patient's otherwise exempt income or resources. The Alabama nursing homes (Opelika) attacked both regulations [1] but the Florida nursing homes (Johnson's) challenged only the provision eliminating supplementation. The Alabama district court upheld the payment limits regulation as consistent with the statute under which it was promulgated. Both district courts upheld the supplementation regulation as within the Secretary's authority. We affirm.

### Payment Limits

Medicaid is funded by the Secretary of HEW and administered by participating states under Title XIX of the Social Security Act, 42 U.S.C.A. §§ 1396–1396e. The program provides medical assistance for the aged, the blind, the disabled, families with dependent children, and other individuals with insufficient resources to meet the cost of necessary medical care.

HEW provides federal matching funds to finance state plans for medical assistance which conform to federal requirements. The appropriate state agencies, in this case the Alabama Board of Health and the Florida Department of

---

[1] The Alabama case was originally dismissed for lack of jurisdiction and failure to state a claim upon which relief could be granted. Opelika Nursing Home, Inc. v. Richardson, 323 F.Supp. 1206 (N.D.Ala.1971). On appeal we reversed that decision on grounds unrelated to our decision here, Opelika Nursing Home, Inc. v. Richardson, 448 F.2d 658 (5th Cir. 1971).

Health and Rehabilitation Services, disburse the payments to nursing homes and other providers of medical assistance. The participating nursing homes must agree to accept the payments provided in the state plan. The states establish the amount of the payments subject to the federal statutory limit, which requires the states to:

"[P]rovide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments (including payments for any drugs provided under the plan) are not in excess of *reasonable charges consistent with efficiency, economy, and quality of care.*" (emphasis added) 42 U.S.C.A. § 1396a(a)(30). In implementing the statute [2] the Secretary promulgated 45 C.F.R. § 250.30(b)(3)(ii) [3] which provides that payments by a state to nursing homes cannot exceed the total of the combined payments by the Secretary and the beneficiary to such facilities for comparable medical services under Medicare.

Medicare is both a federally funded and administered program created by Title XVIII of the Social Security Act, 42 U.S.C.A. § 1395 et seq., furnishing hospital and out patient insurance benefits to the aged. The standard for payment to nursing homes participating in Medicare is the *"reasonable cost"* of services determined by statutory [4] and regulatory [5] formula.

### Supplementation

Although, under Medicaid, the states bear the cost of medical assistance (with federal funds), the statute allows states to require cost sharing or deductions on the basis of a patient's income and resources, 42 U.S.C.A. § 1396a(a)(14). Additionally some state programs, including Alabama's and Florida's, allowed further supplementation of the amount paid by the state and the patient. The supplementation payments generally come from the patient's friends or relatives who are not legally obligated to contribute to the Medicaid recipient's support. In addition the patients otherwise exempt income or resources could be used for supplementation. From 1965 to 1969 the Secretary approved plans which permitted supplementation if the state had existing supplementation arrangements with nursing homes and if the state would be unable otherwise to attract a sufficient number of facilities. In 1969 the Secretary promulgated the regulation requiring those states allowing supplementation to submit a plan gradually eliminating that provision.[6]

---

**2.** Under the authority of 42 U.S.C.A. § 1302: The . . . Secretary of Health, Education and Welfare . . . shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which [he] is charged under this chapter.

**3.** *Skilled nursing home services, out-patient hospital services, and clinic services.* Customary charges which are reasonable. Schedules of payments established by the State agency shall not exceed the combined payments received by providers (for furnishing comparable services under comparable circumstances) from the intermediaries or carriers under title XVIII and beneficiaries under title XVIII of the Social Security Act. . . .

**4.** 42 U.S.C.A. § 1395x(v).

**5.** 20 C.F.R. §§ 405.401–405.488.

**6.** 45 C.F.R. § 250.30(a)(6) (formerly 45 C.F.R. § 249.31) requires the state's plan to: "[P]rovide that participation in the program will be limited to providers of service who accept, as payment in full, the amounts paid in accordance with the fee structure, except that, with respect to payment for care furnished in skilled nursing homes, existing supplementation programs are permitted where the State has determined and advised the Secretary of Health, Education, and Welfare that its payments for skilled nursing home services furnished under the plan are less than the reasonable cost of such services permitted under Federal regulations, and the State has prior to January 1, 1971, provided the Secretary with a plan for phasing out such supplementation within a reasonable period after that date."

## Standards of Review

■ As stated by the Supreme Court:

> The standard to be applied in determining whether the [Secretary] exceeded the authority delegated to [him] . . . is well established. . . . Where the empowering provision of a statute states simply that the agency may "make . . . such rules and regulations as may be necessary to carry out the provisions of this Act," we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is "reasonably related to the purposes of the enabling legislation." Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 280–281, 89 S. Ct. 518, 525, 21 L.Ed.2d 474 (1968). (footnote omitted)

Mourning v. Family Publications Service, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318, 329–330 (1973).

■ The empowering provision of the Social Security Act, 42 U.S.C.A. § 1302, contains essentially those same terms and to the extent the nursing homes attack the Secretary's authority to promulgate these regulations we will review them under the "reasonably related" standard.

§ 1302 also requires the rules and regulations to be consistent with the enabling legislation. Determining the regulations consistency with the statute requires examination of the language of each and of the statutory history and congressional purpose.

Given the deference normally accorded an administrator's interpretation of the statutory scheme he carries out, those who attack that interpretation necessarily shoulder a heavy burden. Arizona Dept. of Public Welfare v. HEW, 449 F. 2d 456 (9th Cir. 1971); Connecticut Dept. of Public Welfare v. HEW, 448 F. 2d 209 (2d Cir. 1971); Review Committee v. Willey, 275 F.2d 264 (8th Cir. 1960).

## Reasonable charge v. Reasonable cost

■ Opelika cannot and does not assert that the establishment of payment limits is outside the Secretary's authority, rather the nursing homes contend that by limiting the Medicaid nursing home payments to "reasonable costs" (the Medicare standard) when the Medicaid statute limits the payments to "reasonable charges consistent with efficiency, economy, and quality of care" the Secretary acted inconsistently with his statutory command. We recognize, that "reasonable costs" and "reasonable charges" may have distinct and different connotations in common understanding, but the issue here, as recognized by the district court, is whether reasonable costs as defined in the complex formulae of Title XVIII (Medicare) is consistent with the Medicaid statutory requirement of reasonable charges consistent with efficiency, economy, and quality of care.

Nothing in the statutory scheme or in the statutory history indicates that Congress meant to preclude the reasonable cost standard as a measure of reasonable charges consistent with efficiency, economy, and quality of care. The statutory limit, reasonable charges, etc., applies to all state Medicaid payments. But in 42 U.S.C.A. § 1396a(a)(13)(D), Congress specified that inpatient hospitals should receive reasonable costs under Medicaid. Thus Congress itself seemingly used "reasonable costs" as a standard consistent with the general statutory limit.

Neither can we conclude that the regulation conflicts with congressional intent. Opelika states the obvious when it asserts that Congress' intent was to assure that medical services be available, provided and furnished to qualified individuals under the Act. By attempting to show that the Medicare reasonable cost standard will lead to substantial pecuniary loss for nursing homes and a decrease in the number of providers participating in the program, Opelika, in effect, asks us to substitute our economic judgment for that of HEW. Even if we were inclined to second-guess HEW in

an area of its expertise, Opelika failed to show in district court that the challenged regulation would result in the denial of nursing home services to eligible persons. We are not persuaded that the district court's conclusion was clearly erroneous.

Congress had formulated a comprehensive formula for reimbursing nursing homes under Medicare, under which nursing homes furnish the same services as under Medicaid. It was not inconsistent with the Medicaid standard for the Secretary to promulgate a regulation which adopted the standard Congress had promulgated to achieve the same purposes.

### Elimination of Supplementation

█ Both Opelika and Johnson assert that the Secretary exceeded his authority in promulgating the regulation calling for elimination of supplementation. Nothing in the statute requires the Secretary to authorize state plans which allow supplementation, on the other hand no statutory provision proscribes it either. Supplementation was previously authorized by the Secretary when a state was able to substantiate that absent supplementation it would be unable to enlist sufficient nursing home Medicaid participation.

Although it did not *by statute* proscribe supplementation Congress recognized the undesirability of the practice:

There are wide variations among the States in the manner of financing the cost of nursing home care provided to the needy. In some States, the full cost of care is paid. In others, a negotiated rate is developed which may or may not approximate the reasonable cost or reasonable charges for the services provided. Some States, however, depend upon the supplementation of the State agency's below-cost allowances for care with contributions from relatives or the needy individual himself. As a matter of public policy, it would be best for all concerned: the needy individual, his relatives, the State agency, and the nursing home if the reimbursement made by the State represented the reasonable cost or reasonable charges for comparable services. Until such time as proper and adequate payments are made, a problem exists for those States which have been using the supplementation system as a means of providing the additional funds necessary as a result of the State's payment of less than the full costs of nursing home care. The committee has considered this matter carefully and has determined not to include any legislation dealing with this situation upon the assurance of the Department of Health, Education, and Welfare that existing supplementation programs will be permitted to continue until January 1, 1971, where a State determines and advises the Secretary that its payments for nursing home care are less than the reasonable cost of the care and services provided. Such States are expected to provide the Secretary, prior to 1971, with a plan for phasing out such supplementation during a reasonable period of time subsequent to January 1, 1971.

S.Rept. No. 744, 90th Cong., 1st Sess., at 187–188 (1967), U.S.Code Cong. and Admin.News, p. 3026.

The Secretary has tracked in the regulation, 45 C.F.R. § 250.30(a)(6), the expressed congressional objective. HEW could hardly do better. Mourning v. Family Publications, *supra.*

Affirmed.