**Ruthie DAVIS, Acting as Administratrix of the Estate of Ellis Davis, Plaintiff-Appellant,**

v.

**INTEGON LIFE INSURANCE CORPORATION, Defendant-Appellee.**

No. 79–3919.

United States Court of Appeals, Fifth Circuit. Unit B

May 21, 1981.

McKenney, Thornton & Jordan, Neal D. McKenney, Macon, Ga., for plaintiff-appellant.

Martin, Snow, Grant & Napier, John C. Edwards, Cubbedge Snow, Jr., Macon, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, and HATCHETT, Circuit Judges, and MARKEY *, Chief Judge.

MARKEY, Chief Judge:

Ruthie Davis (Davis), administratrix of the estate of her husband, Ellis Davis (Decedent) appeals from a judgment of the United States District Court for the Middle District of Georgia granting summary judgment for Integon Life Insurance Corporation (Integon) and denying her claim for recovery of the proceeds of a mortgage life insurance policy issued by Integon on the life of Decedent (Count I) and for recovery of punitive damages in the amount of $500,-000 arising out of Integon's allegedly wrongful refusal to pay benefits under the policy (Count II). We affirm.

*Background*

On September 6, 1977, Integon issued a mortgage life insurance policy for $27,000 on the life of Decedent. The policy, intended to pay off Decedent's indebtedness on a home mortgage at his death, names the mortgagee, American Federal Savings and Loan Association (American) as beneficiary. The policy incorporates a contract, an application and a medical history questionnaire. Questions pertinent to Decedent's medical history appear on the application and on the questionnaire. Both documents were completed by agents of Integon who read questions to Decedent and recorded his responses. It was stipulated that Decedent had less than a fourth grade education, was illiterate, and unable to read except that which he had written.

The application was completed on August 15, 1977, by Integon's agent, Clements. It lists Dr. Johnson, an orthopedic surgeon, as Decedent's personal physician. Decedent's last consultation with Dr. Johnson is listed as a physical in 1974 at which time the application states he was in "Excellent Health." A "no" response is listed to a question inquiring whether Decedent had ever had certain ailments, including heart, back, or spinal disorder and to a question inquiring whether Decedent had within the preceding five years consulted any other physician for any other illness or disorder.

On August 30, 1977, Decedent was examined by Integon's medical examiner, Janice Carter (Carter), an employee of Physical Measurements, Inc., a company under contract with Integon to provide such examinations. The medical history questionnaire completed by Carter shows a "no" response to questions 2 and 5:

2. Have you EVER been treated for or EVER had any known indication of:

 . . . . .

 (d) chest pain, palpitation, high blood pressure, rheumatic fever, heart murmer, heart attack or other disorder of the heart or blood vessels?

 . . . . .

5. Other than above, have you within the past five years:

 (a) had a checkup, consultation, illness, injury, surgery?

 (b) been a patient in a hospital, clinic, sanitorium, or other medical facility?

---

*\* Of the U.S. Court of Customs and Patent Appeals, sitting by designation.*

(c) had electrocardiogram, x-ray, other diagnostic tests?

Decedent's responses on the questionnaire show a June, 1977 treatment by Dr. Robert Sears for injuries sustained in an automobile accident, and hospitalizations for a tonsillectomy in 1959 and for a spinal fusion in 1976. The questionnaire shows Dr. Sears as Decedent's personal physician.[1]

Decedent was in an automobile accident in March, 1977 and as a result suffered injuries to his cervical spine. In May, 1977, Decedent complained of chest pains and was hospitalized for three days. He was examined by Dr. Milledge Newton, a heart specialist. At least four electrocardiograms were administered during the hospitalization. Dr. Newton determined that the chest pains were referred from Decedent's cervical spine and muscular in origin. Decedent was told that he had no heart trouble or heart disease.

Decedent died on June 14, 1978. Because Decedent's death occurred within the two year period of contestability of the policy, Integon instituted an investigation into Decedent's medical history. Learning of the May, 1977 hospitalization, Integon denied Davis' claim for benefits under the policy, saying the policy was void ab initio under Ga.Code Ann. § 56–2409 [2] by reason of material and/or fraudulent misrepresentations in the responses to questions 2 and 5 and Decedent's concealment of the May, 1977 hospitalization which Integon says was material to the risk it assumed. Integon tendered a refund of the $260.85 premium to the policy beneficiary, American, which tender was refused.

Davis then filed this action against Integon for recovery of the balance owing American at the time of Decedent's death plus penalties and attorney's fees (Count I) and for punitive damages in the amount of $500,000 arising out of Integon's bad faith refusal to pay the benefits (Count II), which caused Decedent's estate to lose the equity in the mortgaged property.

Integon moved for summary judgment. In support of its motion, Integon offered the deposition of Dr. Charles Burkhart, Integon's Senior Medical Director who, after reviewing Decedent's hospitalization records, concluded that the company would not have issued the policy had it been aware of the May, 1977 hospitalization. He based his opinion on statistics showing that individuals with chest pains resembling heart disease have a mortality rate double that of any other group, even where the electrocardiogram is normal, and on his view that the four electrocardiograms disclosed abnormal changes in the electrical output of Decedent's heart. In opposition to the motion, Davis offered the affidavit of Dr. Newton who stated that the chest pains for which he examined Decedent in May, 1977 were not indicative of heart disease and would not have increased Decedent's mortality rate.[3]

The district court granted Integon's motion on both counts. It found that Dece-

1. Though those statements are inconsistent with the application, wherein Decedent listed Dr. Johnson as his personal physician, and said he had never experienced spinal disorder and had not consulted any other physician for any other illness or disorder within the preceding five years, Integon does not charge them as misrepresentations.

2. § 56–2409 provides in pertinent part:
 All statements and descriptions in any application for an insurance policy ... by or on behalf of the insured ... shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of fact, and incorrect statements shall not prevent a recovery under the policy or contract unless:
 (1) fraudulent, or

 (2) material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
 (3) the insurer, in good faith, would either not have issued the policy or contract, or would not have issued a policy or contract in as large an amount, or at the premium rate as applied for, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been known to the insurer, as required either by the application for the policy or contract or otherwise.

3. Neither the examination by Dr. Newton nor the hospitalization for chest pains is mentioned in the application or in the questionnaire.

dent's statements were material misrepresentations as a matter of law. It further found those misrepresentations fraudulent as a matter of law. The statements were thus considered grounds under Ga.Code Ann. § 56–2409 for voiding the policy. Although not required to reach the merits of Davis' Count II claim for punitive damages, because of its finding with respect to Count I, the district court went on to deny that claim as without foundation.

### Issue

Whether the district court erred in granting summary judgment on Count I, based on a determination that certain statements made in Decedent's application were fraudulent misrepresentations as a matter of law.[4]

### OPINION

The purpose of the summary judgment procedure is not to deny litigants a right of trial where there is a bona fide dispute of material fact. Its purpose is to avoid trial where no factual dispute exists and the moving party is entitled to prevail as a matter of law.

The courts' task is made unwelcome in this case by the unavailability of Decedent as a witness and by the hardship visited upon his estate as a result of the responses he gave in obtaining the mortgage life insurance policy involved. The courts may not, however, shirk the duty of applying the law, and must grant summary judgment, and affirm that grant, when the record so requires.

Integon's principal witnesses (Burkhart and Carter) testified by deposition and were subject to examination at their depositions. Dr. Newton, Davis' principal witness, testified by affidavit. However, that testimony may be evaluated, the facts material to the questions on the policy documents are undisputed, and Decedent's responses to those questions are forever fixed and inescapable.

Construing the evidence, as we must, in a light most favorable to to Davis,[5] we must conclude, as did the district court, that there are no material issues of fact to be resolved and that Integon is entitled to prevail as a matter of law.

Davis says that Decedent, being illiterate, might well have construed the medical history questions in such a manner that his responses, given his construction, were truthful or at least not knowingly false. Mere conjecture, however, cannot create an issue of fact barring summary judgment.

Davis says Decedent did not conceal his May, 1977 hospitalization, because in reporting that he had consulted Dr. Sears in June, 1977 in connection with an automobile accident, Decedent was in fact informing Carter of the hospitalization. The argument has no basis in the evidence of record. The hospitalization occurred some three months after the March, 1977 automobile accident. Dr. Newton, not Dr. Sears, was the only examining physician during the hospitalization, yet his name is nowhere listed by Decedent. The discharge summaries prepared by Dr. Newton show that Decedent was admitted to the hospital for chest pains he had been experiencing for approximately three days. The only mention of an automobile accident in the hospital records is under the heading "PAST HISTORY".

In asserting that Decedent might have truthfully answered "no" to Questions 2 and 5, or alternatively that Decedent's responses, if incorrect, were not made fraudulently, Davis says Question 2 might reasonably have been interpreted by Decedent as inquiring whether he had experienced chest pains associated with or denominated as a "disorder of the heart", a question, according to Davis, to which decedent would truthfully respond "no" because he had been told by Dr. Newton that his chest pains were muscular in origin and not the result of heart trouble or heart disease, that

---

4. Because we uphold the district court's determination that Integon's refusal to pay was justified, we need not and do not reach the issue of punitive damages.

5. *Heyward v. Public Housing Administration*, 238 F.2d 689 (5th Cir. 1956); *National Screen Service Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir. 1962).

is, any "disorder of the heart". Respecting Question 5, Davis points to the clause, "other than above", and says that` Decedent might reasonably have responded "no" because he considered all pertinent information to have been disclosed "above", that is, elsewhere on the application.

We agree with the district court's determination that Questions 2 and 5 required disclosure of the hospitalization for chest pains and that Decedent's "no" responses were misrepresentations of the true state of his health and medical history.

Davis' argument respecting Question 2 is unpersuasive. Decedent, acting in good faith, would have disclosed his chest pains, a symptom specifically mentioned in the question, whatever the origin of those pains.

Davis' contention that Decedent's "no" response to Question 5 was based on his view that the hospitalization had been disclosed "above" is equally unpersuasive, there being no specific mention of the May, 1977 hospitalization, "above" or anywhere else, on the application. Question 5 inquired whether Decedent had been hospitalized within the preceding five years. As stated by the district court "[i]t is inconceivable that a person acting in good faith, even if illiterate, could have failed to disclose a hospitalization occurring only three months before the interrogation" in response to that question.

Thus the district court properly determined that Decedent knowingly gave false answers to some or all of the questions. Though the district court did not apply the label "fraudulent" to Decedent's representations, its reference to "knowingly false" is an adequate synonym.[6]

We conclude that no genuine issue of fact is present and that the district court proper-

ly awarded summary judgment on Count I to Integon.[7]

*AFFIRMED.*

---

6. There is no evidence that either of Integon's agents incorrectly recorded Decedent's answers. Carter did not recall Decedent, but testified that she recorded all answers on questionnaires correctly and that she routinely answers any inquiry of applicants concerning the questions on the questionnaire.

7. Because the district court correctly found Decedent's representations fraudulent, we need not and do not reach an issue of whether those

representations were material as a matter of law to the risk assumed by Integon as an insurer. Nor do we reach Davis' contentions: (1) that materiality of any misrepresentation is irrelevant here, where the contract language allegedly makes fraud the only ground for voiding the policy; and (2) that Dr. Burkhart's testimony was conclusory and should be evaluated in light of his relationship to Integon.